The **GATES RUBBER COMPANY**, a
corporation, Plaintiff,

v.

**USM CORPORATION**, a corporation,
Defendant.

**Civ. A. No. P-3240.**

United States District Court,
S. D. Illinois, N. D.

Nov. 27, 1972.

Stephen H. Cohen, Minneapolis, Minn., Clifford E. Schneider, Peoria, Ill., for plaintiff.

Robert C. Strodel, Assoc., Peoria, Ill., Richard A. Bowman, Minneapolis, Minn., for defendant.

## DECISION AND ORDERS ON MOTION FOR SUMMARY JUDGMENT

ROBERT D. MORGAN, District Judge.

This action seeks damages allegedly sustained by plaintiff as a result of the failure of the base of a lead extrusion press manufactured and sold to plaintiff by Farrel-Birmingham Company, Inc. The latter is now an operating division of defendant, USM Corporation.[1]

The press was delivered to, and installed in plaintiff's plant at Galesburg, Illinois, in the early part of the year 1964. It was used by plaintiff in the process of manufacturing high-pressure, commercial rubber hose. Suffice it to state, for present purposes, that the press was designed to extrude lead at a pressure in excess of 2,500 pounds per square inch, to form a temporary mold to maintain the proper shape of the hose material during a vulcanizing process in hose manufacturing.

The press was operated by plaintiff until about July 23, 1968, at which time the base platen of the machine cracked rendering the machine inoperable. The base platen is an integral part of the machine. It not only supports the some 288,000 pounds bulk thereof, but, also, it absorbs forces generated in the lead extrusion process, which are distributed to and throughout the base.

Plaintiff's original complaint was filed on March 16, 1971. Count I thereof alleged that defendant was negligent in the design, manufacture and installation of the press and that such negligence was the cause of the subsequent failure of the machine and the consequent damage to plaintiff. Count II is predicated upon a theory that defendant is strictly liable in tort for the failure of the machine and consequent damage to plaintiff. Plaintiff later amended its complaint to add as Count III the allegation that defendant had fraudulently misrepresented facts as to the design of the base upon which plaintiff relied. The complaint prays both actual damages and consequential damages, including loss of profits, and enhanced costs incurred by plaintiff as a result of the machine failure.

---

1. Farrel was merged with USM in 1968. For convenience, the term "defendant" is used herein to designate, as the context requires, either Farrel or USM.

Defendant answered the complaint, as amended, *inter alia*, denying its liability and asserting statutes of limitation as defenses to all three counts of the complaint.

The cause is now before the court upon defendant's motion for summary judgment upon each of the three counts. In its reponse to that motion, plaintiff has indicated its withdrawal of Count II of the complaint, predicated upon the theory of strict liability in tort. In order that the record shall clearly reflect the status of the cause, an order will enter in conjunction with this memorandum, and upon that representation by plaintiff, dismissing Count II of the complaint.

Defendant moves for summary judgment on Count I, the negligence count, that plaintiff's recovery, if any, must be limited, as a matter of law, to its actual damages, to the exclusion of plaintiff's claim for consequential damages.

It also moves for summary judgment dismissing both Counts I and III upon the ground that the causes of action therein stated are barred by statutes of limitation. The court is convinced that the causes of action are barred by statutes of limitation as hereinafter found and stated. The court also believes that circumstances justify resolution at this time and in this court of the question of limitation of liability as well.

### Limitation of Liability

■ Defendant relies upon an exclusionary clause contained in its proposal for sale of the press to plaintiff to limit its liability for negligence to actual damages suffered. Plaintiff claims that there is a question of fact on whether that exclusionary clause is a part of the sales agreement between the parties. The court has before it extensive depositions taken by the parties to this cause, all documentary evidence exchanged by the respective parties in conjunction therewith, and the affidavit of Gerald R. Gonyer, an officer of defendant, stating chronologically pertinent events connected with the sale of the subject press. From such evidentiary material it clearly appears that there exists no genuine issue as to any material fact to be tried, and that the exclusionary clause does form a part of the sales agreement between the parties.

The following evidentiary facts are undisputed in the sworn material before the court.

Plaintiff, a Colorado corporation, is a large corporate manufacturer of rubber products, operating a number of plants in the United States and several foreign countries. One such plant is located at Galesburg, Illinois. Defendant, through its Farrel division, is a manufacturer of heavy industrial machinery and equipment.

About October 30, 1962, defendant issued from its office in Rochester, New York, a proposal and quotation for the sale to plaintiff of a 2,500 ton lead extrusion press. That proposal included a description, specifications and price for the press, under general terms and conditions of sale printed thereon. Paragraph 5 of such conditions contained a limited warranty against defects in material and workmanship for one year after the date of shipment.[2] In addition to the warranty provisions, paragraph 7 thereof provided:

"We shall have no liability for any special, indirect or consequential dam-

---

2. " \* \* \* There are no warranties, express or implied, statutory or otherwise, except such warranties as are expressly set forth herein. We warrant the machinery or equipment described herein, so far as the same is of our own manufacture, against defects in material and workmanship under the normal use and service for which it is designed, for a period of one year after date of shipment; our obligation under this warranty being limited, however, to the furnishing or repairing of, at our option, a part or parts determined by us to be defective, with all dismantling and assembly at Purchaser's plant, necessary packaging and transportation costs to be paid by Purchaser. Purchaser waives any right to damages for breach of warranty in the event of cancellation by Purchaser."

ages arising from loss of production or other losses owing to failure of machinery or equipment."

Gerald R. Gonyer was then the defendant's midwest district manager and sales representative who serviced accounts with plaintiff. His office was located in Chicago, Illinois. On March 21, 1963, Gonyer and other representatives of defendant met with representatives of the plaintiff at plaintiff's Galesburg plant, at which time agreement as to certain modifications in specifications and price as contained in the October 30th proposal were reached. Such modifications were included in a letter from defendant to plaintiff on March 28, 1963, which updated and revised the prior proposal to reflect the result of the conference of March 21.

Alpha M. Chase, of plaintiff's purchasing department, stated on deposition that plaintiff had internally issued a purchase requisition for the press, dated May 23, 1963. On May 27, 1963, Mr. Chase contacted Mr. Gonyer by phone and stated that he was placing plaintiff's order number C–70285 for the press in accordance with defendant's proposal, as revised. Gonyer relayed the order to defendant's office in Rochester on the same day. An engineering order was issued by defendant on May 28, 1963, to begin construction of the press. In the early part of June defendant released for that production certain components of the press and placed orders for the obtaining of others. In early November, 1963, Gonyer received from plaintiff its formal written order number C–70285, which was dated March 23, 1963, but which was actually prepared on or about November 1, 1963.

Plaintiff's position that there are material factual issues to be determined rests upon its contention that there is conflicting testimony as to the fact of the May 27th phone order. It also suggests that defendant's proposals are in conflict with plaintiff's written order of November, 1963, and thus are not a part of the sales agreement.

■ As to the first contention, plaintiff relies upon Chase's deposition statement that he did not recall a phone conversation with Gonyer on May 27, 1963. But he also stated that he might have made such a call and that verbal placement of an order for equipment was not an unusual practice. At best, Chase does not remember. That does not refute the positive testimony that the call was received and that immediately thereafter defendant commenced production of the press.

With respect to the written purchase order, plaintiff takes the position that two such orders were sent to defendant, the first dated June 25, 1963, and the second dated November 1, 1963.[3] The June 25 order described the press ordered, and states on its face:

" * * * The above to be in accord with your proposal #62–6, revised 10–30–62, to include revisions and recommendations in your letter of 3–28–63 * * *.

"Confirming our calls to Jerry Gonyer on 5–24, 5–27, and Jerry Gonyer's call of 6–11–63."

The November 1, 1963 order stated, in part:

" * * * The above to be in accord with Farrel proposal 62–6 revised dated 10–30–62 and to include recommendations and revisions in their letter of 3–28–62."

Each of those orders contained in the terms and conditions printed on the back thereof the statement that "The liability of Buyer and of Seller under this contract shall not be limited except as provided in this purchase order."

The existence of a material factual issue for decision is quite clearly refuted.

---

3. Gonyer testified on deposition that the only written order ever received by him was that dated November 1, 1963. Since the two writings are substantially identical, and since both were prepared subsequently to the oral order and defendant's commencement of production of the press, it is wholly immaterial whether only one or both of such orders were delivered to defendant.

If we assume for purposes of this discussion that there was no oral contract between the parties, plaintiff's purchase order, expressly, is made "in accord with" defendant's October 30th proposal. The order itself must be construed as incorporating the defendant's proposal and, thus, the limitation of liability provisions do not conflict with the disavowal of limitation.

On the other hand, as the court finds on undisputed evidence before the court, there was an oral order for purchase of the press to defendant on May 27, 1963, upon the basis of the proposal of October 30, 1962, as subsequently revised; defendant accepted that order by its acts, begun on May 28, 1963, and extending into early June of the same year, commencing production of the press pursuant to that order; the written order of November 1, 1963 confirmed the oral contract between the parties and effectively incorporated the defendant's proposal as a part thereof; and the warranty provisions of defendant's proposal and paragraph 7 thereof disavowing defendant's liability for consequential damages are a part of the sales contract between the parties.

█ In approaching the question of the legal effect of said paragraph 7 upon this litigation, it must first be determined what substantive law governs decision of this issue. Plaintiff opts for the law of New York because the sales agreement was accepted in that state. Defendant suggests that both the Uniform Commercial Code and decisional law of the State of Illinois require that the substantive law of Illinois govern the decision because the transaction bears a significant relation to the State of Illinois.

With respect to conflict of laws questions, the Uniform Commercial Code, adopted in Illinois in 1961, provides:

"* * * When a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this State." Ill.Rev.Stat.1971, c. 26, § 1–105(1).

No Illinois decisions applying Section 1–105(1) have been found, but the recent case of Ingersoll v. Klein, 46 Ill.2d 42, 262 N.E.2d 593 (1970), indicates that the substantive law of Illinois must apply to this cause.

*Ingersoll* was a wrongful death action grounded upon specific statutes of the State of Iowa. The complaint alleged that the decedent had met his death when an automobile in which decedent was riding and operated by one of the defendants broke through ice on the Mississippi River within the territorial jurisdiction of the State of Iowa. All parties involved or interested in the litigation were Illinois residents, and the decedent had been, at and prior to death, a resident of Illinois. The trial court dismissed the complaint upon the ground that the cause of action was governed by Illinois law, not Iowa law. The Illinois Supreme Court affirmed that judgment, saying, in part:

"* * * Realization of unjust and anomolous results which may ensue from the application of *lex loci delicti* leads us to believe that a 'most significant contacts' rule best serves the interests of the State and the parties involved in a multi-State tort action. The record in this case clearly establishes that Illinois has the most significant contact with the action." 46 Ill.2d 48, 262 N.E.2d 596.

The court, quoting Section 379 of the Restatement of the Law, Conflicts of Law, said that important to consider in determining application of the "most significant" contacts rule are the place where the injury occurred, the place where the conduct occurred, the domicile, nationality, place of incorporation and place of business of the parties and the place where the relationship of the parties is centered. *Ibid.*

In the instant case, the order for the press was placed by plaintiff with the Illinois office of defendant, Illinois is the state where the injury occurred, the state where the press was delivered, installed, and operated by plaintiff for a period of several years, and the state where the relationship of the parties is centered. By contrast, the sale contract was accepted in New York and the machine was there manufactured. The latter state had no further contact with the transaction. The Court concludes that Illinois is the state having the most significant contacts with the cause of action and that the cause is governed by Illinois substantive law.

Whatever the approach, it seems abundantly clear that defendant is entitled to summary judgment limiting its liability, if any, to plaintiff's provable actual damages. Section 2–719 of the Uniform Commercial Code provides that parties to a contract may limit available remedies or liability. With reference to consequential damages, the Section provides:

"Consequential damages may be limited or excluded [by agreement of the parties] unless the limitation . . . is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." Ill. Rev.Stat.1971 c. 26, § 2–719(3).

While no reported decision by an Illinois court applying Section 2–719(3) is found, Illinois has for many years given judicial sanction to contract provisions limiting liability for negligence as between the contracting parties, unless such limitations provision is deemed to be unconscionable. *E. g.*: Jackson v. First Nat. Bank, 415 Ill. 453, 114 N.E.2d 721 (1953); Bartee Tie Co. v. Jackson, 281 Ill. 452, 117 N.E. 1007 (1917); Checkley v. Illinois C. R. Co., 257 Ill. 491, 100 N.E. 942 (1913); Chicago R. I. & P. Ry. Co. v. Hamler, 215 Ill. 525, 74 N.E. 705 (1905); Blank v. Illinois C. R.

Co., 182 Ill. 332, 55 N.E. 332 (1899). In *Jackson*, the court held an agreement in a lease absolving a landlord from liability to his tenant for negligent injury to the person of the tenant enforceable, saying that such an exculpatory agreement would be enforced unless enforcement would be against the public policy of the state, or there existed some social relationship of the parties militating against enforcement. 415 Ill. at 460, 114 N.E.2d 721. The other cited cases applied the same rule to negligence exculpation clauses in contracts in both personal injury litigation (*Hamler* and *Blank*) and property damage litigation (*Checkley* and *Jackson*). Presumably, exculpation clauses related to personal injury from consumer goods would not be enforced today in Illinois in view of the legislative determination that such are per se unconscionable, but these cases clearly reflect an established judicial attitude giving full effect to exculpatory clauses for property damages contracted at arm's length in commercial transactions which are expressly omitted from such legislative determination.

Section 2–719(3) is not limited to warranty claims or any specific theory of liability. Its plain language says that "consequential damages may be limited or excluded" by agreement in commercial transactions unless found to be unconscionable. The court cannot read into that section a new exception excluding negligence claims, as plaintiff suggests, since it seems unquestionable, upon the rationale of the Illinois decisions cited, that full effect must be given to the plain words which the State Legislature employed.

Section 2–719(3) was before the court in Southwest Forest Industries, Inc. v. Westinghouse Electric Corp., 422 F.2d 1013 (C.A.9 1970), cert. denied, 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138. Westinghouse had manufactured and installed a turbine generator for Southwest. Southwest filed the suit, both on a warranty and a negligence theory, alleging that defects in the generator had resulted in lost time, labor, and loss

of business to Southwest. Westinghouse relied upon a one-year limited warranty provision and a consequential damage exclusion provision contained in its sales contract. The court held that the consequential damage exclusion relieved Westinghouse from liability for consequential damages, whether the claim was based on a tort or contract theory. Thus, the court said:

> "The general rule is to permit contracts limiting tort liability when they have been bargained between large corporate enterprises as here. * * * Thus the district court was correct in finding that the Westinghouse warranty succeeded in limiting Westinghouse's liability for consequential damages resulting from negligence." 422 F.2d at 1020.

The Court of Appeals for the Seventh Circuit has given full effect to an exculpatory provision in a distributorship contract against claims for lost profits and loss of anticipated profits alleged to have resulted from defective manufacture of the merchandise involved. V–M Corporation v. Bernard Distributing Co., 447 F.2d 864 (C.A.7 1971). Of Section 2–719 of the Illinois Uniform Commercial Code, the court said:

> " * * * Section 2–719 was intended to encourage and facilitate consensual allocation of risks associated with the sale of goods. This is particularly true where commercial, rather than consumer sales are involved." 447 F. 2d at 869.

In contexts other than the Uniform Commercial Code, the Court of Appeals for the Seventh Circuit has sustained contract provisions limiting liability for negligent construction of components of a fire protection system, Philco Corporation v. "Automatic" Sprinkler Corporation, 337 F.2d 405 (C.A.7 1964), and for consequential damages resulting from defects in construction material. National Steel Corp. v. L. G. Wasson Coal Mining Corp., 338 F.2d 565 (C.A.7 1964).

Plaintiff relies upon New York decisions which hold that a general liability limitation is not a defense to a negligence action unless the exclusionary provision expressly includes negligence within its scope. E. g., Willard Van-Dyke Productions v. Eastman Kodak Co., 12 N.Y.2d 301, 239 N.Y.S.2d 337, 189 N.E.2d 693 (1963). Reliance upon those cases must be rejected because the rule pronounced is inconsistent with the controlling law of the State of Illinois.

The contract provision explicitly states that there will be no liability "for any special, indirect or consequential damages arising from loss of production or other losses owing to failure of machinery or equipment." The case involves a commercial transaction between two large corporations and a claim of wholly commercial loss. The provision is valid under the provisions of Section 2–719(3) of the Illinois statute, and it must be construed to bar plaintiff's claim for consequential damages.

### Statutes of Limitation

Defendant also moves for summary judgment dismissing Count I upon the ground that the cause of action is barred by the five-year statute of limitations. Ill.Rev.Stat.1971, c. 83, § 16. The statute provides, in pertinent part, that "actions . . . to recover damages for an injury done to property, real or personal, * * * shall be commenced within 5 years [next] after the cause of action accrued." This motion is well taken.

As noted above, Count I alleges that defendant was negligent in the design, manufacture and installation of the press. By admitted fact, the press was manufactured in 1963 and 1964 and installed in plaintiff's plant in early 1964. Thus, any negligent acts by defendant were committed not later than early 1964. The complaint herein was filed March 16, 1971, approximately seven years after that time.

Illinois courts have uniformly held that the statute of limitations for actions for property damage resulting from negligence begins to run when the negligent act is committed, not from the time when the claimant party actually suffered damage as a result thereof; *e. g.*, Board of Education v. Perkins & Will Partnership, 119 Ill.App.2d 196, 255 N.E.2d 496 (1970); Wilson v. White Motor Corp., 118 Ill.App.2d 436, 254 N.E.2d 277 (1969); Sabath v. Morris Handler Co., 102 Ill.App.2d 218, 243 N.E.2d 723 (1968); Board of Education v. Joseph J. Duffy Co., 97 Ill.App.2d 158, 240 N.E.2d 5 (1968); Simoniz Company v. J. Emil Anderson & Sons, Inc., 81 Ill.App. 2d 428, 225 N.E.2d 161 (1967).

The two Board of Education cases arose out of alleged negligent design and construction of a school building. Construction was completed in 1959. The complaint, filed in 1966, alleged that the District had discovered numerous defects in design and construction after it took possession of the building. Affirming a judgment dismissing a third-party complaint by the defendant Perkins against the defendant Duffy in the earlier case, the court said:

"Insofar as the plaintiff's claim against Perkins is based on alleged negligence, the claim would be barred by the statute of limitations if such defense were not waived, notwithstanding that the negligence may not have been discovered until recently before the filing of the suit. As applicable here the period of limitations commences when the negligent act takes place, and is not tolled by the plaintiff's ignorance of his injury." 97 Ill.App.2d at 161, 240 N.E.2d at 7.

Though the court held that a fact question existed on whether there had been a waiver of the defense of the statute of limitations, the court in *Perkins & Will* reaffirmed that rule, saying:

"It seems to us that the application of the discovery rule [that the cause of action arises when the aggrieved party knows or should have known of his injury] to all causes of action is such a broad and sweeping change in the law as to be beyond the power of the courts.

\* \* \* \* \* \*

" \* \* \* It is our further opinion that, in the factual situation of the instant case, the passage of time *does* increase the problems of proof and, in keeping with the Legislative intent and previous cases interpreting [section 16], the right of action accrued from the time the facts occurred, rather than when discovered." 119 Ill.App.2d at 201–203, 255 N.E.2d at 498–499.

In *Simoniz*, the defendants had constructed a building pursuant to a contract with Simoniz Company in 1953. In August, 1962, a part of the roof thereof collapsed. The complaint alleged that examination following the collapse of the roof revealed that the collapse resulted from defects in design, workmanship and materials of the roof's supportive structures. The complaint was dismissed upon motions invoking the limitations statute Section 16. The court rejected the appellant's argument that the duration of the statutory bar to the cause of action should be measured from the time when it discovered the tort, saying:

"Since there was no fraud or concealment on the part of any of the defendants and since the Illinois precedents and the statute of limitations as expressed in this State do not justify the adoption of the 'know or ought to know' rule in cases such as we have before us, we must conclude that the trial court correctly determined that the action was barred by the five year statute of limitations \* \* \*." 81 Ill.App.2d at 437, 225 N.E.2d at 166.

No case is found in which the Illinois courts have deviated from the rule that the limitations period for actions for property damage caused by negligence is measured from the time of the commission of the negligent act, not from the

time of ensuing injury to property as a result thereof.

The cases upon which plaintiff relies are not applicable to the admitted facts in this case. Both Dunham v. Vaughan & Bushnell Mfg. Co., 42 Ill.2d 339, 247 N.E.2d 401 (1969), and Williams v. Brown Mfg. Co., 45 Ill.2d 418, 261 N.E.2d 305 (1970), were strict liability-in-tort cases for personal injury. In that context, the Illinois courts do apply the "time of discovery" rule to measure the limitations period. Neither case suggests that the same rule would apply to a cause of action for property damage only.

The decision in Rozny v. Marnul, 43 Ill.2d 54, 250 N.E.2d 656 (1969), is equally inapposite. In a suit against a surveyor for damages resulting from reliance upon an inaccurate survey of land, the court held that the statute of limitations began to run when the plaintiff discovered the fact of the survey's inaccuracy. In so ruling, the court noted that there are some causes of action in which the passage of time so greatly increases the problems of proof that the statute runs from the time of the breach of duty, but that in other cases where time does not create problems of proof the statutory bar is measured from the time of discovery of the breach of duty. The court also noted the legislative intent expressed in a statute enacted after the *Rozny* cause of action accrued fixing the statutory limitation for causes of action based upon errors of survey at four years after discovery of the error. Ill. Rev.Stat.1971, c. 83, § 24g. It therefore held, "in keeping with the more recent authorities and the legislative policy manifested" by adoption of the statute, that the cause of action accrued when the plaintiff discovered the defendant's error in the survey.

*Rozny* is clearly limited to the context of causes for injury resulting from sur-

veying errors, and the decision has been so limited by later judicial opinion. Board of Education v. Perkins & Will Partnership, 119 Ill.App.2d at 200, 255 N.E.2d 496 and Wilson v. White Motor Corp., 118 Ill.App.2d at 439, 254 N.E.2d 277.

■ Invoking the provisions of Section 23 of the Illinois Act,[4] plaintiff contends that the existence of its cause of action was fraudulently concealed from it by defendant and that the statute of limitations was tolled until it discovered that it did have a cause of action. The argument is based upon plaintiff's contention that defendant fraudulently represented to plaintiff that the press base was low stressed, though defendant knew that it was high stressed, that defendant repeated the same misrepresentation to plaintiff in conjunction with its subsequent sale to plaintiff of another press, and that defendant failed to inform plaintiff of information available to it concerning plaintiff's cause of action.

Accepting those allegations as true, they simply do not invoke the provisions of Section 23. In Lancaster v. Springer, 239 Ill. 472, 482, 88 N.E. 272, 275 (1909), the court stated the rule as to fraudulent concealment as follows:

"* * * The concealment of a cause of action which will prevent the operation of the Statute of Limitations must be something of an affirmative character, designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence by the person liable is not concealment of a cause of action. Such concealment must consist of affirmative acts or representations."

In Skrodzki v. Sherman State Bank, 348 Ill. 403, 407, 181 N.E. 325, 327 (1932), the court said:

"* * * [Keithley v. Mutual Life Ins. Co., 271 Ill. 584, 111 N.E. 503

---

4. "If a person liable to an action fraudulently conceals the cause of action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards." Ill.Rev.Stat.1971, c. 83, § 23.

(1916)] held that mere silence by the person liable is not concealment of a cause of action, but that such concealment must consist of affirmative acts or representations. It is there also held that fraudulent misrepresentations which form the basis for the cause of action do not constitute a fraudulent concealment in the absence of proof of acts or representations tending fraudulently to conceal the cause of action, and that the rule that the statute begins to run only from the discovery of the fraud does not apply when the party affected by the fraud might with ordinary diligence have discovered it."

The rule has been recently stated and applied in Bush v. Continental Casualty Co., 116 Ill.App.2d 94, 253 N.E.2d 619 (1969), and Nogle v. Nogle, 53 Ill.App. 2d 457, 202 N.E.2d 683 (1964).

There does not exist in this case any evidence indicative of any affirmative act or representation by defendant tending to lull plaintiff into a sense of security and prevent it, with the exercise of due diligence, from learning of the existence of its cause of action. Repetition of the allegedly false representation relative to stress of the base plate certainly would not constitute such a representation.

In *Keithley*, the court said that Section 23 did not toll the running of the statute despite allegations that the allegedly fraudulent statements made in the sale of an insurance policy had been twice repeated by defendant to the plaintiff in the sale of subsequent policies of insurance. Keithley v. Mutual Life Ins. Co., 271 Ill. 584, 591, 111 N.E. 503 (1916).

Sabath v. Morris Handler Co., 102 Ill. App.2d 218, 243 N.E.2d 723 (1968), is of interest in this area. A complaint, grounded on breach of contract, negligence and fraud, alleged damage as a result of the defendant's failure to obtain a requisite driveway permit in conjunction with the construction of a home, though defendant had represented to plaintiff that such permit would be ob-

tained. The complaint was dismissed as barred by the statute of limitations. The court, after reiterating the rule of fraudulent concealment of *Skrodzki*, held that the fact that defendant had subsequently submitted to the plaintiffs a statement showing that defendant had paid for a driveway permit presented a factual question whether that affirmative act excused plaintiffs' failure to ascertain the true state of facts within the limitations period.

In this case, assuming the truth of allegations that defendant did misrepresent facts concerning stress of the base plate in the sale of the press, and that it also failed to disclose to plaintiff facts known to it relevant to the cause of action, it is clear that no affirmative act or representation of defendant was inclined to prevent plaintiff from ascertaining the true facts. Section 23 of the Limitations Act poses no bar to defendant's defense based upon the statute of limitations. That statute requires summary judgment dismissing Count I of the complaint.

Finally, defendant contends that the cause of action alleged in Count III of the complaint is barred by the statute of limitations.

Count III alleges that defendant submitted to plaintiff certain written representations that the bottom platen of the press was low stressed and that certain components of the press would be scientifically tested for soundness, that such representations were untrue and fraudulently made, and that plaintiff relied thereon and thereby suffered damage.

Such written representations emanated from defendant's New York office. Thus, the cause of action for fraudulent misrepresentations arose in the State of New York; but the court must consider provisions of the Illinois limitations statute, Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and the Illinois choice-of-law rules in the resolution of this limitations question, Klaxon Co. v.

Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Section 21 of the Illinois limitations statute provides:

"When a cause of action has arisen in a state or territory out of the state * * *, and, by the laws thereof, an action thereon cannot be maintained for reason of the lapse of time, an action thereon shall not be maintained in this state." Ill.Rev.Stat.1971, c. 83, § 21.

■ Thus, for purposes of this litigation, the limitations statutes of the State of New York are the applicable statutes of the State of Illinois. The New York statutes provide that a cause of action for fraud shall be commenced either within six years after the commission of the fraudulent act or within two years after the actual or imputed discovery of the fraudulent act, whichever period is the longer. 7B N.Y.Consol. Laws §§ 203(f), 213(9) (McKinney 1972); Hoff Research & Development Laboratories, Inc. v. Philippine National Bank, 426 F.2d 1023, 1025, and note 1 (C.A.2 1970); see, Comment to Section 203(f), 7B N.Y.Consol.Laws, pp. 125–126 (McKinney 1972).[5]

■ In this case, plaintiff's cause of action accrued when the alleged fraudulent statements were made in 1963. The base failed in July, 1968, at which time plaintiff discovered, or "could with reasonable diligence have discovered," facts which disclosed the existence of its cause of action. The complaint was filed March 16, 1971, more than six years after the alleged fraudulent misrepresentations and more than two years after plaintiff's imputed knowledge thereof.

Plaintiff's assertion that it first discovered facts indicative of the alleged fraud during discovery proceedings in this cause in August of 1971 is both irrelevant and partly refuted by deposition testimony of its own witnesses. Section 203(f) measures the two-year period from the time when plaintiff could with reasonable diligence have discovered its cause of action. That time was July, 1968, when the base failed.

Summary judgment must enter dismissing Count III of the complaint.

Accordingly, it is ordered that:

1. Count II of the complaint is hereby dismissed upon plaintiff's representation that the same is withdrawn.

2. Summary judgment is hereby entered for the defendant, dismissing Counts I and III of the complaint at plaintiff's cost, as barred by the applicable statutes of limitations.

3. Alternatively, should the judgment of dismissal of Count I be reversed, determination shall be considered as hereby made, unless likewise changed on review, that plaintiff's right of recovery is limited, as a matter of law, to its provable actual damages.

5. Section 213 provides a six-year statute of limitations for various causes of action, with subdivision 9 relating to fraud, to-wit:

"An action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it."

Section 203(f) provides:

" * * * where the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time when the cause of action accrued, whichever is longer."

The Comment to Section 203(f) states in part:

" * * * Thus, the statutes provide that, where a statute of limitations is tolled pending discovery, the plaintiff shall have his basic statute of limitations computed from the time the cause of action accrued or two years from discovery, whichever is longer. * * * It can be seen therefore, that, the statute of limitations in a fraud action is two years from discovery but, in no event, is it less than six years from commission."