**SOUTHWEST FOREST INDUSTRIES, INC., Appellant,**

v.

**WESTINGHOUSE ELECTRIC CORP., Appellee.**

No. 22696.

United States Court of Appeals, Ninth Circuit.

Feb. 9, 1970.

James H. O'Connor (argued), Richard E. Mitchell, of O'Connor, Cavanagh, Anderson, Westover, Killingsworth, & Beshears, Phoenix, Ariz., for appellant.

John J. Flynn (argued), James Moeller, Paul G. Ulrich, of Lewis, Roca, Beauchamp & Linton, Phoenix, Ariz., for appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and PENCE,* District Judge.

DUNIWAY, Circuit Judge:

In 1963 Southwest Forest Industries, Inc. [Southwest] brought suit against Westinghouse Electric Corp. [Westinghouse] for damages resulting from defects in a 25,000 kilowatt turbine generator sold by Westinghouse to Southwest.[1] Jurisdiction in the district court rested on diversity of citizenship. Southwest appeals from the district court's judgment for Westinghouse. We affirm.

After preliminary feasibility studies, Southwest and Rust Engineering Company [Rust] entered into an agreement under which Rust was to construct a pulp and paper mill for Southwest near Snowflake, Arizona. Pursuant to this agreement, Rust initiated negotiations with Westinghouse for the purchase of the generator in 1960. There followed a warranty battle, the outcome of which is disputed by the parties. Westinghouse built the unit and it was installed in the Southwest plant in late 1961. The bulk of the damages claimed by Southwest are for "lost time, labor, materials, and loss of business" suffered as the result

---

* Honorable Martin Pence, United States District Judge, District of Hawaii, sitting by designation.

1. The original claim was for $11,000,000. By the time of trial it had been reduced to approximately $2,500,000. An antitrust count in the original complaint was severed.

of subsequent slowdowns and shutdowns in Southwest's Snowflake plant in late 1961 and 1962, allegedly caused by defects in the Westinghouse generator.

### 1. *The proceedings in the trial court.*

The parties are in sharp disagreement about how to characterize the proceedings in the trial court, and many of their arguments on appeal rely on one or another interpretation of those proceedings. We therefore resolve that issue at the outset. The best way to arrive at an understanding of what happened in the trial court is to review briefly the history of the litigation in this case.

Southwest's original complaint claimed negligence and breach of warranty. In response to a Westinghouse interrogatory asking for "a copy of the document or documents which plaintiff considers to contain the terms of the warranty in question," Southwest in 1964 submitted correspondence containing the Westinghouse form of warranty.[2] From that date until the eve of trial in 1967, discovery and trial preparation proceeded on the theory that the Westinghouse warranty controlled. In 1966 Southwest twice amended its complaint, once to add a count alleging malfunction of an "exciter" unit in 1964, once to add a count in strict liability in tort. Shortly before trial Westinghouse filed two

motions for partial summary judgment: one was on the strict liability count, contending that the rationale of the doctrine was inapplicable to the situation in this case; the other urged that the Westinghouse warranty barred recovery of consequential damages and that all the damages claimed were concededly consequential. At the following pretrial conference, Southwest voluntarily abandoned its warranty count and the court granted Westinghouse's motion for summary judgment on the strict liability count. This left only the negligence claims relating to the basic unit and the "exciter" unit. Then, literally on the eve of trial, Southwest filed a motion to amend its complaint to reallege the warranty theory, and to amend its 1964 answers to the Westinghouse interrogatories asking which documents contained the warranty. Southwest now wished to take the position that its own much broader warranty applied.[3] The trial court granted the motion and continued the trial for several days to allow for additional discovery. Westinghouse then renewed its motion for summary judgment on the warranty count. In denying that motion, the district court said:

"I think, gentlemen, by the vehemence of your own argument, what you are both trying to do is argue from your version of the testimony in the various

---

2. "Westinghouse, in connection with apparatus sold hereunder, agrees to correct any defect or defects in workmanship or material which may develop under proper or normal use during the period of one year from the date of shipment, by repair or replacement f. o. b. factory of the defective part or parts, and such correction shall constitute a fulfillment of all Westinghouse liabilities in respect to said apparatus, unless otherwise stated hereunder. Westinghouse shall not be liable for consequential damages. * * *

"On orders placed with Westinghouse in accordance with this quotation the above conditions shall take precedence over any printed conditions that may appear on your standard order form."

3. "(2) The materials to be furnished hereunder shall comply with the plans and specifications furnished to the Vendor by

the Purchaser or Engineer. The Vendor warrants the proper quality, character, adequacy, suitability· and workability of the materials. The Vendor and the material furnished hereunder are subject to the approval of the Engineer. The Vendor agrees to indemnify the Purchaser and Engineer against all loss or damage arising from any defect in materials furnished hereunder. * * *

"(12) All negotiations and agreements prior to the date of this order are merged herein and superseded hereby, there being no agreements or understandings other than those written or specified herein. In the event of conflict between any proposal of Vendor specifically referred ·to herein and this order, and as to all matters or points not expressly covered by such proposal, the terms and conditions of this order shall govern."

depositions and interpreting from there to the exhibits and asking the court to evaluate in many instances the testimony of the persons being deposed, which I don't think is the function of a court in a motion like this."

Trial to a jury began the following day.[4] At trial, Southwest's file on the purchase of the generator was produced for the first time. (Southwest had previously said that the file was lost or destroyed.) This file suggested that Southwest's own executives had assumed throughout the relevant period that the Westinghouse warranty was in effect.

It was at this juncture that Westinghouse renewed its motion for "partial summary judgment," a procedure to which Southwest's trial counsel agreed:

"Mr. Perry [counsel for Southwest]: If the court please, Mr. Flynn has indicated that he desires to renew his motion for summary judgment at this time, and on behalf of the plaintiff, I have agreed that it is appropriate that it be done at this time since I believe that the issues he raises are legal ones and that there is sufficient uncontradicted evidence in the record from which a determination of those legal issues can be made.

Counsel has raised the point in two separate motions for summary judgment that consequential damages cannot be recovered in this action, in an action based upon negligence, for the

reason that he takes the position that consequential damages are never recoverable in a negligence action; and for the second reason that he believes the warranty clause, which is the effective clause in this case, has the effect of barring a right to recover in tort. We, of course, resist both of those positions.

In addition, there is a dispute which we believe is a legal one about which if any warranty provision is effective to control the contractual relationship between the parties, the contention of Westinghouse, the defendant, being that the disclaimer of limitation of warranty in their documents that are before your Honor is effective and limits any right of recovery on the part of the plaintiff.

The position of Southwest Forest Industries as plaintiff is that the warranty is as broad as the language contained on the back of the purchase orders issued on behalf of Southwest Forest Industries, and that language is broad enough to permit recovery of the damages we seek in this action. The damages we seek being so called consequential damages, and more specifically being damages for overhead expenses incurred while the mill was not operating as it would have, but for the turbine generator problems and the exciter problems.

---

4. After the opening statements at trial, the court, apparently under the impression that the defendant was speaking about summary disposition of the warranty question, said:

"THE COURT: Well, it's my understanding Mr. Flynn [counsel for the defendant], that one of the big issues in this case as it is now developed is, just what is the contract, and I don't think that the court can determine that in a vacuum.

I am reluctant to force competent counsel to try to stipulate or agree to anything that they don't want to agree to, and to give them an opportunity to have it tried; but with the state of issues in this case and the pleadings as they are now, if you two could agree upon a chain of documents, then perhaps the court could decide as a matter of law with those facts in mind just when the contract was entered into in this series of correspondence, and, having determined that, then as to what the terms of it were. But I think that some of the things that you are asking the court to decide are some of the things that are actually factual issues before they become legal issues, if I understand what you are saying, and in that case it is more appropriate, I think, to take the facts and then handle it with instructions to the jury that this is what the contract was as a matter of law and this is what it provides as a matter of law, and then if you find thus and so, and go ahead."

Have I stated the issues fairly?

Mr. Flynn [counsel for Westinghouse] : I think that's true. * * * "

The parties supplemented the record by stipulating to those additional documents and depositions which they wished the court to consider.

The argument of both counsel was devoted to drawing inferences from the evidence before the court. In granting the Westinghouse motion for "partial summary judgment," the court said:

"THE COURT: Well, I feel rather reluctant to determine in a summary manner as we have here a matter of this magnitude, but after going through all of the documents and the depositions last night and hearing counsel's [sic] argument today, I can only conclude that both of their actions prior to installation and start-up of the turbine and by the actions of Southwest subsequent to that, that at all times in the negotiations and in the contracts all of the parties were going on the assumption that the warranty in the original Rust-Southwest inquiry, an invitational letter, and as modified to some extent by the proposal and later order acknowledgement of Westinghouse, was the contract warranty regardless of at what stage along the line of proceedings a final contract was entered into. I don't think that the conduct of the parties during the entire time can be reasonably or logically explained on any other assumption."

The warranty referred to by the trial court is what we have described as the Westinghouse warranty. The court also determined as a matter of law that the language in the warranty was successful in relieving Westinghouse of all liability for consequential damages, including any liability on a straight tort theory. The jury was then dismissed and the proceedings closed. The court later entered a formal order and an opinion.

At this point, Southwest changed counsel and filed a motion to alter or amend the judgment. Southwest's memoran-dum in support of that motion made many of the arguments now pressed here on appeal. In denying the motion, the trial judge made the following remarks:

" * * * I think it's really, in the court's mind at least, immaterial whether you characterize the proceeding as a request for an interlocutory summary adjudication on a point in this case as to what constituted the warranty or whether it was a waiver of a jury finding. * * *

The only thing that bothers the court and has bothered me all the time is whether or not a summary judgment under these circumstances was proper for just the considerations that Mr. O'Conner [Southwest's new counsel] has raised. * * * "

On appeal the parties persist in their disagreement over the nature of the trial court proceedings. The issue was extensively briefed, Southwest maintaining that the district court disposition was an improper summary judgment since there were issues of material fact, Westinghouse claiming that the district court proceedings were actually a trial to the judge, by agreement of the parties, on a limited record supplemented by stipulations.

█ Whatever Southwest's current counsel's current position may be, we think the record shows that the trial court, with the consent of both parties, decided all the issues raised by the final amended complaint, including the negligence in manufacture and repair issues. The parties stipulated to what was in substance a trial to the court on a limited record. The district judge was well aware that issues of fact existed, as his denial of the motion for summary judgment before trial and his remarks quoted in footnote 4 show. It was reasonable for Southwest's trial counsel to agree to this procedure in order to avoid a long jury trial under theories that the court might ultimately reject. If Southwest could not recover consequential damages for negligence, and the damages were concededly consequential, then there was

no point in trying the negligence issues. Southwest's acquiescence in the procedure amounted to a waiver of jury trial in the event all the issues before the court should be decided favorably to Westinghouse. They were so decided, and we therefore treat the district court's decision on appeal as a decision on the merits following trial.

We were presented with a similar record in Gillespie v. Norris, 9 Cir., 1956, 231 F.2d 881. In *Gillespie*, where the validity of a patent was at issue, the trial court had also rendered a "summary judgment." Though we dismissed the appeal as premature because a counterclaim had not been adjudicated, we said:

"This Court holds that, by acquiescence in this procedure, the parties waived jury trial and submitted all questions of fact relating to novelty, utility, invention and anticipation to the court for determination. It already has been shown that there were questions of fact upon which the parties were at issue. Now, while summary judgment cannot be granted where there are questions of fact to be disposed of, even by consent of all concerned, there is no reason why parties cannot agree to try a case upon affidavits, admissions and agreed documents. In effect, that is what was done here. No objection whatever was made at the time of submission that there were questions of fact which could not be decided upon the evidence before the trial court. Such a postulate was never suggested to the trial judge. It was only upon appeal that this spectre is raised for the first time."

See also Page v. Work, 9 Cir., 1961, 290 F.2d 323, modified on rehearing 9 Cir., 290 F.2d 334, cert. denied 1961, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76; Tripp v. May, 7 Cir., 1951, 189 F.2d 198.

2. *The merits.*

Proceeding to the merits, there are several issues properly before this court on appeal.

a. *Was there a meeting of the minds?*

■ First, Southwest argues that there was never a meeting of the minds on the Westinghouse form of warranty as required by the Uniform Commercial Code, §§ 2–204, 2–207(3) as interpreted by the Pennsylvania courts. In light of the nature of the decision below, this must be taken as an argument that the district court's decision was clearly erroneous or unsupported by the evidence.[5] That position cannot be maintained on this record, and thus we need not go into Southwest's argument that code warranties apply in the absence of agreement on an express warranty or that Southwest's own warranty applies. We leave the "battle of the warranties" problem to another day.

b. *Was the limiting language of the warranty unconscionable?*

Southwest argues that the limitation of consequential damages was unconscionable, and that the limitation was not brought to the attention of Southwest. As to the latter assertion, the district court expressly found that:

"[t]here were experienced purchasing departments, staffs of engineers, and legal departments available to all

5. The district court said:
"At all times in the negotiations and in the contract documents, and in the complaint itself, which alleges June 6, 1960, as the contract date, all of the parties operated on the assumption that the Westinghouse proposal and the Rust letter of intent, as confirmed by the Westinghouse order acknowledgement form, constituted the contract for the sale of the turbine generator unit.

The conduct of the parties during the entire time and up to the filing on August 2, 1967, of plaintiff's 'Amendment of Complaint—July 29, 1967,' cannot reasonably be explained on any other basis. By every objective test there was an agreement as to the nature of the contract in effect and its terms and conditions and particularly as to the express warranty involved." (Footnotes omitted.)

three companies. Rust has had great experience in purchasing electrical equipment from Westinghouse. * *

All purchasing departments involved were familiar with the Westinghouse order and acknowledgement forms."

The unconscionability argument runs as follows: under the warranty Southwest's sole remedy was repair or replacement of defective parts; Westinghouse made the repairs negligently and Southwest was thus left without any remedy at all; this makes the exculpatory clause unconscionable and therefore invalid under UCC sections 2–719(2) and 2–302.

■ The problem with this argument is that it was not raised properly below. As the district court noted in its opinion, "there is no evidence before the court that Westinghouse failed to perform its obligations under its warranty * * * there are no allegations of unconscionability." In rejecting the argument when it denied Southwest's motion to alter or amend, the district judge said:

"I do not think that the question of unconscionability was ever seriously raised by counsel. No offer was ever made to make any record supporting it, and I think in the context of this case these facts and these parties, the court could not say that there was a question of unconscionability upon which evidence should be taken particularly in the absence of any offer or claim by counsel to that effect."

We agree. Certainly the district judge's refusal to entertain the argument on the post-judgment motion was not an abuse of discretion.

### c. *Was there liability for negligence?*

Southwest's argument concerning liability for negligence must take the following form in light of our characterization of the proceedings below: The district court erred in its conclusion that the Westinghouse warranty was ade-

quate as a matter of law to relieve Westinghouse from liability for (1) negligent breach of warranty and (2) negligence on a pure tort theory; therefore Southwest was entitled to a jury trial on the issue of negligence.

■■ As to the first, Pennsylvania law applies.[6] The district court was correct in holding that "[l]imitations of liability under Pennsylvania law are valid and enforceable. The parties to an agreement may contract as to limitation of liability resulting from breach of both express and implied warranties." Such a limitation may also preclude recovery for losses resulting from negligence. See Mayo v. McCloskey & Co., E.D.Pa.1961, 200 F.Supp. 7; Shafer v. Reo Motors, Inc., W.D.Pa.1952, 108 F.Supp. 659; Charles Lachman Co. v. Hercules Powder Co., E.D.Pa.1948, 79 F.Supp. 206; Eimco Corp. v. Joseph Lombardi & Sons, 193 Pa.Super. 1, 162 A.2d 263 (1960); Magar v. Lifetime, Inc., 187 Pa.Super. 143, 144 A.2d 747 (1958). See generally National Steel Corp. v. L. G. Wasson Coal Mining Corp., 7 Cir., 1964, 338 F.2d 565; Fire Ass'n of Philadelphia v. Allis Chalmers Mfg. Co., N.D.Iowa 1955, 129 F. Supp. 335.

Second, Southwest argues that Westinghouse cannot limit its liability on a pure tort negligence theory under *Arizona* law. Southwest may have waived this argument. Its trial counsel repeatedly asserted that Southwest was proceeding only on a contract theory. Southwest did not argue for liability under Arizona tort law until after the trial court judgment, though the district court did state that "[u]nder these facts there also can be no recovery for consequential damages based upon a theory of negligence, apart from a contractual duty." The most persuasive argument for waiver is that it seems clear that both parties assumed until after the change in counsel that a decision for Westinghouse on the warranty issues would conclude the

---

6. All purchase negotiations and documents material to this transaction were executed in Pennsylvania. See Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, 159 A.L.R. 857; Ross v. Ross, 96 Ariz. 249, 393 P.2d 933 (1964).

trial. There is no indication that either party expected the court to make a finding on negligence. The court dismissed the jury without protest from Southwest's trial counsel after its decision.

■■ The general rule is to permit contracts limiting tort liability when they have been bargained between large corporate enterprises as here. While it is true that the Arizona Supreme Court has said "[r]elief from negligence cannot be contracted away," this was in an F.E. L.A. action against a common carrier. Apache Ry. Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142, 159 A.L.R. 857 (1945). Thus the district court was correct in finding that the Westinghouse warranty succeeded in limiting Westinghouse's liability for consequential damages resulting from negligence. See generally Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965); 2 F. Harper & F. James, The Law of Torts §§ 28.1–28.14, 28.25 (1956); W. Prosser, Torts § 67, at 456–59 (3d ed. 1964); Restatement (Second) of Torts, §§ 388–404 (1965); James, Assumption of the Risk, 61 Yale L.J. 141, 162–66 (1952). See also the state and federal Pennsylvania cases cited *supra*.

■ As the district court notes, Southwest's best argument seems to be on the negligent repair issue. One who undertakes repairs has a duty arising in tort to do them without negligence. The district court did not decide that there had been no negligence in repair. Because the court was explicit, it cannot be presumed that it decided all the factual issues before it, if indeed this issue was before it. But the district court was correct in holding that the warranty precluded recovery for consequential damages resulting from negligence in repair. In undertaking the repairs, Westinghouse was merely fulfilling its contractual obligations. There was no assertion, as the district court pointed out, that Westinghouse had not fulfilled those obligations. And the warranty is clear both that repair and replacement are all that Westinghouse may be held responsible

for and that Westinghouse may not be held liable for consequential damages.

■ Southwest further claims that the district court erred in characterizing the damages claimed by Southwest as consequential. This argument was raised for the first time after judgment; Southwest's trial counsel had characterized the damages as consequential throughout. In any event the warranty also provided that repair and replacement of nonconforming parts should "constitute a fulfillment of all Westinghouse liabilities," which is adequate to limit Westinghouse's liability unde UCC § 2–719(1) (a). This section also meets Southwest's argument that the warranty is an unsuccessful disclaimer of liability under UCC § 2–316.

■ Finally, Southwest argues that Westinghouse should have been held liable on a theory of strict liability in tort. The district court was correct when it granted Westinghouse's pretrial motion for summary judgment on this count. As the district court said:

"the principles underlying the doctrine of strict liability in tort for defective products were not applicable. All damages sought by Southwest in this case are consequential damages. The turbine generator is a highly specialized, custom-built piece of machinery, built to particular specifications and tested in the factory before delivery, under supervision of engineers representing both parties.

The circumstances of this case do not bring the plaintiff within that class of consumers, type of transaction, or damages suffered that created the need for relief based on strict liability in tort. Neither the philosophy nor the theory of the doctrine of strict liability in tort nor the actual holdings of the cases involved support an extension of the doctrine of strict liability in tort to the present facts." (Footnotes omitted.)

See generally Seely v. White Motors Co., *supra*; 2 F. Harper & F. James, The Law of Torts §§ 28.15–28.28 (1956);

Prosser, The Fall of the Citadel—Strict Liability to the Consumer, 50 Minn.L. Rev. 791, 822–823 (1966).

In summary, the district court's decision cannot be overturned as an improper summary judgment, since it actually amounted to a decision on the merits after the parties stipulated to a trial to the court on a limited record. The other points made by appellant are either without merit or were raised belatedly after the district court judgment. It cannot be said that the district judge abused his discretion in denying Southwest's new counsel's motion to alter or amend.

Affirmed.