473 F.2d 400
 11 UCC Rep.Serv. 1126
 COUNCIL BROTHERS, INC., Plaintiff,
v.
RAY BURNER COMPANY, Defendant-Third Party
Plaintiff-Appellant-Cross-Appellee,
v.
BURNHAM CORPORATION, Third Party Defendant-Appellee-Cross-Appellant.
 No. 71-3585.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 5, 1973.
 
 H. O. Pemberton, Tallahassee, Fla., for appellant, Ray Burner Co.
 Gerard A. Weiss, Irvington, N. Y., Truett & Watkins, Tallahassee, Fla., for appellee, Burnham Corp.
 Dexter Douglass, Tallahassee, Fla., for Council Brothers, Inc.
 Before JOHN R. BROWN, Chief Judge, TUTTLE and INGRAHAM, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This case involves primarily a question as to the proper measure of damages for breach of an express written warranty relative to the sale of goods. We are of the view that the district court, in entering judgment for appellant Ray Burner Company, failed to take into account various items of incidental damages to which the appellant, under the provisions of the Uniform Commercial Code, was entitled and, therefore, we remand the case to the district court for a hearing on the limited question of damages.
 
 
 2
 The operative facts of this case are as follows: Burnham Corporation, appellee and cross-appellant herein, maintains a steel fabricating plant in Lancaster, Pennsylvania. Ray Burner Company, the appellant, is a manufacturer of oil and gas burners and controls. Early in 1967 Ray Burner ordered from Burnham a steel boiler, commonly known as a pressure vessel, which was to be built in accordance with Ray Burner's design and specifications. Subsequently, in July, Burnham delivered the completed boiler to Ray Burner for a purchase price of $2299. Ray Burner then mounted a burner and various fittings and controls on the boiler and sold the assembled package to Council Brothers, Inc., a mechanical contractor engaged in the installation of heating and cooling systems, for $5,859.73. In the fall of 1967 Council Brothers installed the unit in a school in Tallahassee, Florida.
 
 
 3
 Shortly thereafter the boiler was found to be leaking and Council Brothers approached Ray Burner with a request that this defect be remedied.[1] Ray Burner in turn advised Burnham of the leakage and asked that Burnham inspect the unit. In March, 1968 a representative of Burnham undertook such an inspection and concluded that the leakage was caused by the build-up of sludge on the rear tube sheet of the boiler. He advised that the boiler be thoroughly cleaned. Ray Burner conveyed this advice to Council Brothers which, in accordance therewith, attempted to remedy the situation, but despite these efforts, the boiler continued to leak.
 
 
 4
 In July, 1969, Council Brothers brought an action against Ray Burner for breach of warranty.[2] The nexus of the complaint was that Ray Burner had sold to Council Brothers a hot water boiler which proved to be defective, that the boiler had been sold under an implied warranty, and that by reason of the defect Council Brothers had sustained considerable damages. Pursuant to the provisions of Rule 14(a) of the Federal Rules of Civil Procedure, Ray Burner impleaded Burnham Corporation, the manufacturer of the boiler, as third party defendant.
 
 
 5
 In its third party complaint Ray Burner alleged that the leakage in the boiler, if caused by inherent defects, constituted a breach of Burnham's implied warranty of fitness for a particular purpose and demanded that Burnham idemnify it for the full amount of the judgment, if any, which might be entered in favor of Council Brothers and against Ray Burner. By its third party answer Burnham denied that the boiler was defective and as a separate defense alleged that the boiler was sold to Ray Burner subject to an express written warranty[3] which guaranteed the boiler for a period of one year from date of shipment and that Ray Burner had failed to present its claim within this one year period.
 
 
 6
 Trial of the action was set for June 1, 1970. However, prior to the submission of evidence the following colloquy between the court and counsel for Ray Burner took place:
 
 
 7
 "The Court: You are not suggesting, are you, Mr. Pemberton, that we are going to proceed to try that third party claim also, or are we?
 
 
 8
 Mr. Pemberton: No, I don't think there is a necessity for trying the third party claim at the present time. If there is any need for that we will take it up later.
 
 
 9
 The Court: All right."
 
 
 10
 On the basis of that understanding the trial (hereafter the "original action") was limited to the issues raised by Council Brothers against Ray Burner, which included the question whether the boiler itself was defective. Though counsel for Burnham did not actively participate, he was at all times present during these proceedings.
 
 
 11
 At the conclusion of the trial the court entered these findings of fact:
 
 
 12
 "3. The leakage was not caused by the formation of scale in the hot water boiler.
 
 
 13
 4. The leakage was caused by a defective tube sheet which defect was present at the time the boiler was purchased.
 
 
 14
 5. The boiler in its present condition has little or no value to plaintiff or the owner.
 
 
 15
 6. The cost of the boiler, installed, was $5,859.73.
 
 
 16
 7. The plaintiff was caused to expend the sums set forth below as a direct result of the defective condition of the boiler.
 
 
 17
 a. Paid by plaintiff to others for repairs $3,505.72
b. Labor 1,589.76
c. Cost of removing old boiler and installing new boiler 2,500.00"
 
 
 18
 Upon these findings and upon the conclusion that Ray Burner had breached its implied warranty to Council Brothers, the court entered judgment in favor of Council Brothers and against Ray Burner in the amount of $13,455.21 plus interest, which figure included each of the items of damage listed in the court's findings of fact.
 
 
 19
 Subsequently the court undertook to consider the issues raised by Ray Burner's third party claim against Burnham.[4] This third party action initially came on for trial on September 15, 1970. However, the case was continued when it became apparent that Ray Burner, over Burnham's objection, intended to rely upon the court's findings of fact in the original action, in particular, the finding that the boiler was inherently defective. As to the question thus raised the court held, in an order dated October 16, 1970, that Burnham was bound by the earlier judgment and thus could not thereafter dispute the factual determination that the boiler was defective. On cross-appeal Burnham here attacks the propriety of that order.
 
 
 20
 Trial of the remaining issues was held on February 26, 1971. At the close of the evidence Burnham moved to dismiss the third party complaint (which motion the court treated as if it were one for a directed verdict) on the grounds that there was no cause of action stated by Ray Burner for breach of an implied warranty and for the further reason that Ray Burner's claim was barred by the one year limitation contained in the express written warranty. The court held that while there was no implied warranty under the particular circumstances of this case upon which Ray Burner might recover, nonetheless Burnham had breached its express warranty to Ray Burner and was therefore liable in damages to Ray Burner as a result of the breach. The court subsequently entered judgment in favor of Ray Burner for a total of $2,752.60 plus interest. Ray Burner moved to amend this judgment to include the incremental amount for which it was liable to Council Brothers, but the motion was denied. Ray Burner now appeals.
 
 
 21
 We consider first Burnham's cross appeal. Burnham urges that it was error for the trial court to hold that Burnham was bound by the findings of fact rendered in the original action between Council Brothers and Ray Burner. It is argued that since Council Brothers had failed to amend its complaint to include Burnham as a party defendant to the original action and since Burnham had not filed an answer to Council Brothers' complaint against Ray Burner, Burnham had been neither a party to nor a participant in the original action. This contention, it is asserted, is further supported by the fact that counsel for Ray Burner, at the commencement of the original trial, had specifically stated that there was no necessity to try the third party claim at that time, and the trial court thereupon agreed, in effect, to try the third party claim separately.
 
 
 22
 We do not agree. Of course, we might be disposed to treat of the issue differently were we satisfied that Burnham was only tangentially connected to the original action. However, such evidence as there is indicates that Burnham was in fact directly involved in the trial between Council Brothers and Ray Burner, though perhaps as a silent partner to the original defendant.
 
 
 23
 Of particular significance is the fact that Burnham was at all times during the trial represented by counsel, though counsel did not actively "participate" (in the sense that he did not examine and cross-examine witnesses nor present independent evidence). However, since Ray Burner's third party claim against Burnham was essentially a claim for indemnity of any sum which might be assessed against Ray Burner in favor of Council Brothers, it must be assumed that the presence of Burnham's counsel was for the purpose of protecting Burnham's interests. For that reason and for the additional reasons stated in the trial court's order, portions of which are reprinted in the margin,[5] we are of the view that the court properly held that Burnham was bound by the judgment in the original action.
 
 
 24
 We turn then to the issue raised by Ray Burner in its appeal, to wit, that the trial court erred in failing to award to Ray Burner damages from Burnham in the full amount for which Ray Burner was held liable to Council Brothers. To the contrary, Burnham urges that the court's award of damages, in the amount of $2,752.60, was the maximum to which Ray Burner was entitled under the terms of the written warranty. Though we do not agree wholly with either party, we think, nonetheless, that the district court, in its award of damages to Ray Burner, failed to include certain items of incidental damages which, under the Uniform Commercial Code, Ray Burner might properly have recovered.
 
 
 25
 At the outset we note that the sole issue presented by the parties for review is the proper measure of damages recoverable by Ray Burner from Burnham under the latter's express written warranty. This warranty, which we repeat here for convenience, provided as follows:
 
 
 26
 Burnham Corporation warrants all equipment manufactured by it and bearing its name plate to be free from defects in workmanship or material under normal use, maintenance and service for the period of one year from date of shipment. If any part of the equipment appears to be defective in workmanship or material and if such part is returned to the Burnham Corporation factory, transportation charges prepaid, within said period, and if the same is found by Burnham Corporation to be defective in workmanship or material, it will be replaced or repaired, free of charge, F.O.B. factory of Burnham Corporation, or, at its option, Burnham Corporation may refund the price paid for said part. No claim for cost of removing, returning or replacing defective parts or for other consequential damage will be allowed. On equipment furnished by Burnham Corporation, but not manufactured by Burnham Corporation (such as gauges, valves, motors, thermometers, regulators) Burnham Corporation extends only the same guarantee as extended to Burnham Corporation by the manufacturer.
 
 
 27
 Burnham argues that Ray Burner's remedies in this case are strictly limited to those set forth in the second sentence of the warranty, which provides for repair or replacement of defective parts or for refund of the purchase price, and that as a consequence Burnham could be obligated, at most, to refund to Ray Burner the purchase price of the boiler. This contention, it seems to us, is unsustainable. In Florida as elsewhere generally a written warranty, such as the one before us, is often referred to and treated as a contract between buyer and seller. 77 C.J.S. Sales Sec. 313; U.S. Rubber Products v. Clark, 145 Fla. 631, 200 So. 385 (1941). However, in construing such a contract we are obliged to follow the special rules of Article 2 of the Uniform Commercial Code which governs the law of sales in Florida. Of specific application here is F.S.A. Sec. 672.2-719 which concerns contractual modifications or limitations on a buyer's remedies. In pertinent part it provides:
 
 
 28
 "(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages:
 
 
 29
 (a) The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and
 
 
 30
 (b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." (emphasis added)
 
 
 31
 Subsection (1) (b), according to the Official Comment to the UCC, creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. Thus, if the parties intend for a written warranty to prescribe an exclusive remedy, this must be clearly expressed.
 
 
 32
 We would point out that the warranty here at issue nowhere, clearly or otherwise, specifies that the remedy or remedies provided thereby are to be exclusive of any other remedy which Ray Burner might have under the various provisions of the UCC.[6] Therefore, we think, the remedies provided are cumulative rather than exclusive.
 
 
 33
 However, Burnham's warranty further provides that "No claim for cost of removing, returning, or replacing defective parts or for other consequential damages will be allowed." This clause purports to limit the measure of damages which Ray Burner might otherwise be entitled to recover for breach of warranty, and we think it plain that the portion of the warranty just quoted clearly expresses an intention to exclude for all purposes Burnham's liability for "removing, returning, or replacing defective parts or for other consequential damages."[7] We find it difficult to visualize a clearer way to express an exclusive limitation on the measure of damages.
 
 
 34
 Nonetheless Ray Burner on this appeal claims it is entitled to certain items of damage which are not expressly excluded by the terms of the written warranty. These are discussed in detail below. For the moment it is appropriate to state the statutory foundation for the recovery of damages for breach of warranty. Applicable to this particular transaction is F.S.A. Sec. 672.2-714 which sets the buyer's damages for breach in regard to accepted goods and which in pertinent part provides:
 
 
 35
 "(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
 
 
 36
 (3) In a proper case any incidental and consequential damages under the next section may also be recovered."
 
 
 37
 The next section, F.S.A. Sec. 672.2-715, defines incidental and consequential damages as follows:
 
 
 38
 "(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
 
 
 39
 (2) Consequential damages resulting from the seller's breach include:
 
 
 40
 (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
 
 
 41
 (b) Injury to person or property proximately resulting from any breach of warranty."
 
 
 42
 Of course, consequential damages having been excluded by the terms of the warranty, Ray Burner would be entitled to recover only those items of damage which might properly be classified as incidental.[8] In this respect it is noted that the Official Comment to the UCC states that the items of incidental damages listed in Sec. 672.2-715 are merely illustrative and not exhaustive of the typical kinds of incidental damages.
 
 
 43
 On the basis of the foregoing statutes the district court awarded damages to Ray Burner in the amount of $2,752.60. Though the court did not explain what the award consisted of, counsel for Ray Burner, albeit not from facts of record, here asserts that this award represented the price paid Burnham by Ray Burner for the boiler and shipping costs of the boiler to Tallahassee, Florida. However, regardless of the court's basis for its judgment, we are of the view that Ray Burner was doubtless entitled to damages in a greater amount.
 
 
 44
 Since Ray Burner seeks indemnity for the full amount of the judgment in favor of Council Brothers, we consider each of the various items of damage which comprised that judgment in order to ascertain which might properly be recovered by Ray Burner from Burnham.
 
 
 45
 First, the court awarded to Council Brothers an item in the amount of $5,859.73 which represented the price paid by Council Brothers to Ray Burner for the packaged boiler complete with appurtenances. This figure is not broken down into components and we do not speculate as to the cost elements involved.[9] Suffice it to say that the buyer, Ray Burner in this instance, has the burden of proving the fact, the cause, and the extent of his loss. Sperry Rand Corporation v. Industrial Supply Corporation, 337 F.2d 363, 372 (CA 5, 1964). Upon remand, Ray Burner ought to be entitled to recover as primary damages, if properly proven, the amount equal to the difference between the actual value of the boiler at the time and place of delivery and the value the boiler would have had if without defect. F.S.A. Sec. 672.2-714. Additionally Ray Burner might recover, as incidental damages, whatever amount might reasonably compensate it for the sums it expended in adding to, shipping, and start-up services on the boiler, diminished by the salvage value, if any, of the appurtenances (i. e., the burner, fittings, and controls) which Ray Burner had installed on the bare pressure vessel. See Sperry Rand Corp. v. Industrial Supply Corp., supra. Of course, Ray Burner is not entitled to recover from Burnham the profits Ray Burner made on its sale of the packaged boiler to Council Brothers, such profits being an element of consequential damages which are excluded by Burnham's written warranty. See e. g., Lewis v. Mobil Oil Corporation, 438 F.2d 500 (CA 8, 1971).
 
 
 46
 Second, the trial court awarded to Council Brothers damages in the amount of $3,505.72 which figure represented payments to others for repairs on the boiler. Since the trial court found that these expenses were reasonably incurred by Council Brothers in an effort to make the boiler function properly, they constitute an item of incidental damages for which Ray Burner is entitled to be indemnified. See Lewis v. Mobil Oil Corp., supra; Lanners v. Whitney, 247 Or.223, 428 P.2d 398 (1967).
 
 
 47
 Third, the trial court found that as a direct result of the defective condition of the boiler, Council Brothers was obliged to expend the sum of $1,519.76 for labor and accordingly it included this figure in the original judgment. Having reviewed the record we conclude that these expenditures for labor, like those for repairs, were incurred in an attempt to make the boiler functional and thus, might properly be recovered by Ray Burner from Burnham.
 
 
 48
 The fourth item of damages which the court awarded to Council Brothers and for which Ray Burner seeks to be indemnified is an item for removing the defective boiler and installing a new one, in the amount of $2500.00. We think this item falls within the limitation of liability contained in Burnham's written warranty and cannot be recovered by Ray Burner.
 
 
 49
 The case is affirmed in part, reversed in part, and remanded to the district court for further proceedings in accordance with this opinion.
 
 
 
 [1]
 Council Brothers at that time was a subcontractor to Albritton-Williams, Inc. which had a contract with the Leon County Board of Public Instruction to build the school in Tallahassee. Because of the leakage in the boiler, the board withheld from Albritton-Williams the sum of $10,000, which amount Albritton-Williams then withheld on the subcontract with Council Brothers
 
 
 [2]
 The action originally was brought in the Circuit Court of Leon County, Florida, but was removed to the United States District Court for the Northern District of Florida upon a showing that the amount in controversy exceeded the sum of $10,000 and that there existed diversity of citizenship between the parties in that Ray Burner was a non-resident of Florida
 
 
 [3]
 This written warranty, which appeared on the back of a general invoice form used in the sale of the boiler to Ray Burner, provided:
 "Burnham Corporation warrants all equipment manufactured by it and bearing its name plate to be free from defects in workmanship or material under normal use, maintenance and service for the period of one year from date of shipment. If any part of the equipment appears to be defective in workmanship or material and if such part is returned to the Burnham Corporation factory, transportation charges prepaid, within said period, and if the same is found by Burnham Corporation to be defective in workmanship or material, it will be replaced or repaired, free of charge, F.O.B. factory of Burnham Corporation, or, at its option, Burnham Corporation may refund the price paid for said part. No claim for cost of removing, returning or replacing defective parts or for other consequential damage will be allowed. On equipment furnished by Burnham Corporation, but not manufactured by Burnham Corporation (such as gauges, valves, motors, thermometers, regulators) Burnham Corporation extends only the same guarantee as extended to Burnham Corporation by the manufacturer."
 
 
 [4]
 These subsequent proceedings form the subject matter of this appeal. The original judgment in favor of Council Brothers and against Ray Burner is not here at issue, except insofar as it relates to the amount of damages which Ray Burner might properly recover from Burnham
 
 
 [5]
 The court said:
 "At the trial of the cause between Council Brothers, Inc. and Ray Burner Company, both third party plaintiff and third party defendant were represented by counsel. There was no objection by either the third party plaintiff or the third party defendant to the trial of the claim of the plaintiff against the primary defendant. The third party defendant was represented by counsel during the trial and had the opportunity to take part in the trial and conduct examination and cross-examination of witnesses. In fact, it would have been error for the Court to refuse counsel for the third party defendant to take part in the trial. Counsel for the third party defendant had a duty to take part in the trial and conduct such cross-examination of witnesses as counsel deemed necessary. Wiggins v. City of Philadelphia, 331 F.2d 521 (3rd Cir. 1964).
 A representative of the third party defendant Burnham Corporation, E. C. Renner, who at the time was plant superintendent of the Burnham Corporation, Steel Products Division, Lancaster, Pennsylvania, testified as an expert witness for the defendant Ray Burner Company. It must be assumed that his presence at the trial was to testify as to the issue raised in the answer of the third party defendant that there was no defect in the boiler manufactured by the third party defendant Burnham Corporation. The third party defendant is bound by the judgment of this Court entered on June 30, 1970, and is not entitled to present any further testimony with respect to the first defense in the answer of the third party defendant. Caputo v. U. S. Lines, Co., 311 F.2d 413 (2d Cir. 1963).
 
 
 [6]
 This fact adequately distinguishes this case from those cited to us by Burnham in support of its position. E. g., Wyatt Industries, Inc. v. Publicker Industries, Inc., 420 F.2d 454 (CA 5, 1969); Southwest Forest Industries Inc. v. Westinghouse Corp., 422 F.2d 1013 (CA 9, 1970); Eimco Corp. v. Lombardi Sons, 193 Pa.Super. 1, 162 A.2d 263 (1960); Magar v. Lifetime, Inc., 187 Pa.Super. 143, 144 A.2d 747 (1958). In each of the cited cases the written warranty at issue unequivocally stated that the remedy provided thereby was exclusive (or conversely that the seller's liability was thus limited)
 
 
 [7]
 The exclusion of consequential damages, moreover, is expressly permitted by Subsection (3) of F.S.A. Sec. 672.2-719 which provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."
 The case before us, of course, is not one in which the prima facie rule would apply and since the issue of unconscionability was not raised by the parties we need not consider it.
 
 
 [8]
 We hold that this is a "proper case" for the recovery of incidental damages, as required by Sec. 672.2-714(3), supra. Absent a contractual or statutory exclusion, the manufacturer of a defective product, we think, might properly be held accountable for any damages to the buyer which flow naturally from the manufacturer's breach of warranty. This conclusion is fully commensurate with the purposes of the Uniform Commercial Code as expressed, for example, by FSA Sec. 671.1-106 which states that the remedies provided by the code "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed. . . ."
 
 
 [9]
 It seems likely that the $5,859.73 figure at the very least includes 1) the price paid by Ray Burner to Burnham for the bare pressure vessel ($2299), 2) the cost to Ray Burner for parts and labor in mounting a burner, fittings, and controls to the boiler, 3) shipping costs, 4) start-up costs, and 5) profit to Ray Burner