CYCLOPS CORPORATION, Plaintiff,

v.

The HOME INSURANCE COMPANY,
Defendant,

v.

FISCHBACH AND MOORE, INC., and
Allis-Chalmers Manufacturing Com-
pany, Third-Party Defendants.

CYCLOPS CORPORATION, Plaintiff,

v.

FISCHBACH AND MOORE, INC., and
Allis-Chalmers Manufacturing Com-
pany, Defendants.

Civ. A. Nos. 70–1053, 70–1370.

United States District Court,
W. D. Pennsylvania.

Jan. 23, 1975.

Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for Cyclops Corp.

Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., Hamilton, Kramer & Myers, Columbus, Ohio, for Home Ins. Co.

· Thorp, Reed & Armstrong, Pittsburgh, Pa., for Fischbach and Moore, Inc.

Egler, McGregor & Reinstadtler, Pittsburgh, Pa., for Allis-Chalmers Manufacturing Co.

WEBER, District Judge.

This case involves a clause in a contract of sale for a large electrical motor manufactured by Defendant Allis-Chalmers and sold by Defendant Fischbach and Moore to Plaintiff Cyclops Corporation.

The motor was installed in July of 1967 and suffered a breakdown on January 20, 1969. There was no injury to persons or property other than that to the motor itself. The motor was repaired by Allis-Chalmers at no cost to the plaintiff and was placed back in operation.

The plaintiff's claim here is against the manufacturer and selling agency and is almost entirely for lost profits incurred during the time that the motor was out of service being repaired with a small claim for "direct charges, freight, removal reinstallation, etc." The claim against both manufacturer and distributor is based on the sale of a defective product in breach of warranty, against the distributor it is asserted as breach of contract and against the manufacturer it is based on negligence.

We have previously determined another claim arising out of the same incident involving the nature of the damage suffered from the event. See Cyclops v. Home Insurance Company et al., 352 F. Supp. 931 (W.D.Pa.1973).

The defendants have jointly moved for Summary Judgment on the grounds that the written provisions of the sales documents explicitly exclude liability for consequential damages.

There has been very extensive discovery, production of documents, interrogatories, depositions and requests for admissions as to documents in this case, much of which we now find immaterial to the disposition of the controlling question before us. The parties have been afforded a full exploration of all relevant evidence. As to the controlling question we are convinced that there is no genuine issue of material fact.

The pertinent contract provisions read as follows:

"Company's liability to Purchaser whether in contract or in tort arising out of warranties, representations, instructions, or defects from any cause, shall be limited exclusively to correcting the equipment and under the conditions as aforesaid."

"Company shall not in any event be liable for indirect, special, consequential or liquidated damages or penalties."

"*Conditions of Service.*

\* \* \* \* \* \*

The Company shall in no event be liable for indirect, special, or consequential damages."

We omit the provisions in the contract documents pertaining to the exclusions of implied warranties and the waiver of statutory warranties because we believe that the sole controlling question is the limitation of damage clauses and their effect under Sec. 2–719 of the Uniform Commercial Code, and not the express or implied warranties under Secs. 2–313 to 2–316 of the Uniform Commercial Code.

The above recitals are contained in Motion Exhibit 4 which is a Proposal and Contract, No. IS–2255, dated November 23, 1965 from Allis-Chalmers to Fischbach and Moore, which was transmitted to Cyclops by Fischbach and Moore with a letter stating that the motor supplied would be in accordance with Allis-Chalmers specification and warranty. This proposal was accepted by Cyclops in their purchase order No. 4766, dated December 15, 1965 confirming its order for the equipment as specified in Allis-Chalmers Specification IS–2255.

Fischbach and Moore served as a distributor in this transaction. Title passed through its hands and it served as a contractor for installation. They had served in this capacity in prior transactions between these parties. Cyclops stated that it wished to buy equipment manufactured by Allis-Chalmers. The purchase was made through Fischbach and Moore because that firm would aid in financing the transaction. The transaction was in all other respects a transaction between Allis-Chalmers and Cyclops for equipment as specified by Allis-Chalmers as set forth in the initial letter and specifications sent directly by Allis-Chalmers to Cyclops on October 27, 1965. (Motion Exhibit 33), Cyclops Purchase Order to Fischbach and Moore,

dated December 15, 1965 ordered the equipment as specified in Allis-Chalmers' specifications, (Motion Exhibit 2). The warranties of Allis-Chalmers and Fischbach and Moore both run to the benefit of Cyclops, and the limitation of damages clause runs to the benefit of both the manufacturer and the distributor. See: Southwest Forest Industries v. Westinghouse Electric Corp., 422 F.2d 1013 (9th Cir. 1970) and K & C Inc. v. Westinghouse Electric Corp., 437 Pa. 303, 263 A.2d 390 (1970).

■■ The negotiations in this sale occurred in the Cyclops' office in Ohio, the equipment was delivered and installed in Ohio. The contact with other states is minimal; the home office and plant of Allis-Chalmers is in Wisconsin; the home office of Fischbach and Moore is in New York, the forum state is Pennsylvania. There is no contract provision governing the applicable law. We apply the conflict of law rule of Pennsylvania which requires the application of the law of the state with the most significant relationship to the parties and the transaction, or the "center of gravity" of the transaction. Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A.2d 796 (1964); Slaughter v. Philadelphia National Bank, 417 F.2d 21 (3rd Cir. 1969). We conclude that the law of Ohio governs the issues in this suit.

Ohio has adopted the Uniform Commercial Code and the key provision of the Code applicable here is Sec. 2–719, which in Ohio is found in the Ohio Revised Code at Sec. 1302.93. The identical provision is adopted in the forum state as 12A P.S. § 2–719. The text of the Ohio statute is as follows:

"1302.93 (UCC 2–719) Contractual modification or limitation of remedy.

(A) Subject to the provisions of divisions (B) and (C) of this section and of section 1302.92 of the Revised Code on liquidation and limitation of damages:

(1) the agreement may provide for remedies in addition to or in substitution for those provided in section 1302.01 to 1302.98, inclusive, of the Revised Code and may limit or alter the measure of damages recoverable under such sections, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(2) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(B) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code.

(C) Consequential damages may be limited or excluded unless the limitation of exclusions is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not. (129 v. 13. Eff. 7–1–62)."

The loss in this case is entirely commercial, and limited to consequential damages for loss of profits because of business interruption. Thus the exclusion of Par. C of Sec. 1302.93 pertaining to personal injury from consumer goods is not applicable.

Ohio case law prior to the adoption of the Uniform Commercial Code held that where a contract "contains exclusive remedies available to the purchaser in the event of any defect in the design, construction, material or workmanship of such goods, the purchaser is bound by and limited to such remedies in the event of any such defect". 40 Ohio Jur.2d Sales § 170 (1971 Supp.). Ohio cases prior to the adoption of the Uniform Commercial Code have endorsed such a limitation. Marion Machine Foundry and Supply Co. v. Cincinnati Coffin Co., 162 Ohio St. 455, 124 N.E.2d 132 (1955); Federal Insurance Co. v. International Harvester, 91 Ohio App. 369, 108 N.E.2d 352. In a post-code

case, County Asphalt Inc. v. Lewis Welding and Engineering Corp., 323 F.Supp. 1300, affd. 444 F.2d 372 (2nd Cir. 1971) (cert. den. 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252) Ohio law was applied by the court under the terms of the contract, and an exclusion of consequential damages was enforced under UCC 2–719 as adopted in Ohio. The exclusion was enforced despite a claim of unconscionability. The determination of this issue was made by the judge on a review of the record of a prior trial without a separate hearing.

■ A choice of law problem is not presented unless the determination of the case on the merits would vary according to which related jurisdiction supplies the governing internal substantive law. Dale System, Inc. v. General Teleradio, Inc., 105 F.Supp. 745 (S.D.N.Y.1952). We have been shown no authority to the effect that the substantive law of Ohio varies from that of the forum state, or would produce a different result from that produced by the law of any other state having contacts with the case, or from the rule applied generally in all jurisdictions, particularly that of the forum state.

We are dealing with the provisions of the Uniform Commercial Code, a uniform statute widely adopted and applied throughout the United States, and our review of case law indicates a uniformity of construction.

■■ We find no difference between the controlling law of Ohio and that of other jurisdictions, with respect to clauses limiting damages, under common law principles prior to the Code, or under the Uniform Commercial Code. We believe that the controlling law is similar throughout all jurisdictions

"Where the contract of sale contains a stipulation as to the measure of damages in the event of a breach of warranty, such stipulation is binding in the absence of bad faith.

. . . . a provision of a sales contract that the seller shall not be liable for consequential damages for breach thereof exonerates the seller from liability for such damages." 77 C.J.S. Sales § 374 a & b.

See also: 67 Am.Jur.2d Sales § 535, Exclusion of Consequential Damages; 17 ALR 3rd Annot. Construction and Effect of UCC Art. 2, Dealing With Sales § 49. Effect of contractual limitation of buyer's remedies, and 1974 Supplement.

The following cases from other jurisdictions have upheld similar limitation of damages clauses. Fredonia Broadcasting Corp. v. RCA Corp., 481 F.2d 781 (5th Cir. 1973) applying Texas law in the purchase of TV broadcasting equipment where seller fulfilled obligation by the repair and replacement of defective equipment; Southwest Forest Industries, Inc. v. Westinghouse Electric Corp., 422 F.2d 1013 (9th Cir. 1970) applying Pennsylvania law that limitation of damages to repair and replacement of an industrial turbine was effective; Council Bros. Inc. v. Ray Burner Co., 473 F.2d 400 (5th Cir. 1973) applying Florida law sustained a limitation on consequential damages in the sale of a boiler; Gates Rubber Co. v. USM Corp., 351 F.Supp. 329 (S.D.Ill.N.D. 1972) sustained a limitation against liability "for any special, indirect or consequential damages arising from loss of production or other losses owing to failure of machinery or equipment" in the case of a commercial transaction between two large corporations involving wholly commercial loss.

In Pennsylvania the limitation of damages to replacement and repair and the exclusion of consequential damages has been upheld in a commercial loss case in K & C Inc. v. Westinghouse Electric Co., 437 Pa. 303, 263 A.2d 390 (1970). The Court noted the commercial nature of the transaction and held that "the parties by excluding consequential damages had merely decided to allocate their risks this way." (p. 309, p. 393 of 263 A.2d). This case is of interest because it, like the instant case, involved a middleman in the sale. The Court held that the limitation of dam-

ages ran to the benefit of both the manufacturer and the distributor in whose sales contract the limitation appeared, on the third-party beneficiary doctrine. No requirement of privity will be applied as to the benefit of the limitation as well as to the benefits of warranties as established in Kassab v. Central Soya, 432 Pa. 217, 246 A.2d 848 (1968). In Southwest Forest Industries v. Westinghouse Electric Corp., cit. supra, the United States Court of Appeals for the 9th Circuit was applying Pennsylvania law in a three party situation. Southwest contracted with Rust Engineering for the construction of a pulp mill. Rust purchased the generator from Westinghouse for installation in plaintiff's mill. The Court held that the contract warranty of Westinghouse supplied in response to the invitation to submit proposals was the one on which the parties relied, regardless of the form of the sale, and the limitations of Westinghouse's proposal relieved it of all liability for consequential damages, whether under warranty or under a claim of negligence. See also: Cyrogenic Equipment Inc. v. Southern Nitrogen, Inc., 490 F.2d 696 (8th Cir. 1974).

■■■ All of these cases contain the elements present in the instant case, a commercial sale between large business entities, and commercial loss not involving personal injury or property damage. Such limitations do not exhibit the element of unconscionability under the reservation in sub-paragraph 3 of Uniform Commercial Code 2–719. Nor do the circumstances here cause the limited remedy to fail of its essential purpose. The defective motor was repaired by Allis-Chalmers as required by the contract as noted in V-M Corp. v. Bernard Distributing Corp. 447 F.2d 864 (7th Cir. 1971).

"Section 2–719 was intended to encourage and facilitate consensual allocations of risk associated with the sale of goods." (p. 869).

We have been discussing only the provision for limitation of damages here under Uniform Commercial Code 2–719. The limitation is expressed in clear terms:

"The Company shall not in any event be liable for indirect, special, consequential or liquidated damages or penalties." (Exhibit 4).

This limitation applies:

"whether in contract or in tort arising out of the warranties, representations, instructions or defects from any cause . . ." (Exhibit 4).

It matters not then whether this be labelled a "latent defect". We are not talking about the extent or limitation of liability for negligence or of warranties, but of an agreed limitation of damages.

"Sec. 2–719(3) is not limited to warranty claims or any specific theory of liability. Its plain language says that 'consequential damages may be limited or excluded' by agreement in commercial transactions unless found to be unconscionable." Gates Rubber Co. v. USM Corp., cit. supra, (p. 334 of 351 F.Supp.)

We are not haunted by the ghost of Neville Chemical Company v. Union Carbide Corp., 294 F.Supp. 649 (W.D.Pa. 1969) rev. in part 422 F.2d 1205 (3rd Cir. 1970) because in that case we found the language of the limitation insufficient. It did not clearly express the intent of limitation of damages for negligence. It did not clearly exclude consequential damages. The present contract is clear and definite as to these limitations. Finally, Neville limited the damages to refund of the purchase price, a remedy far below a bare minimum in quantum in view of the vast disparity between the purchase price of the defective raw materials and the damages resulting when the finished product passed through the hands of manufacturers, wholesalers, and retailers into the hands of consumers. A remedy limited to refund of the purchase price clearly failed in its essential purpose under the highly unusual circumstances in that case, and was therefore ineffective under UCC 2–719(1)(a).

Similarly in Keystone Aeronautics Corp. v. R. J. Engstrom Corp., 499 F.2d 1461 (3rd Cir. 1974) the Court of Appeals for this Circuit found that the waiver in that case did not clearly and expressly waive rights of strict liability under Sec. 402A Restatement of Torts 2d, although under Pennsylvania law such a right may be clearly and expressly waived between parties of equal bargaining power.

 We must, therefore, reject Plaintiff's argument that the implied warranties of merchantability and fitness for a particular purpose are controlling. Whether or not they have been sufficiently disclaimed by Defendants is of no moment here because we are not dealing with the warranties, or whether or not they were disclaimed or breached, or whether Allis-Chalmers was guilty of negligence. We are dealing with an express limitation on damages under UCC 2–719, which under the law of Ohio, and the decisions of courts of other jurisdictions dealing with an identical Uniform Statute, have held to be binding, absent the element of unconscionability or the failure of the essential purpose of the remedy. Nor do we find present here a basis for avoiding the limitation of liability on the grounds that defendants have been guilty of wilful and dilatory behavior in not honoring its express warranty, as in Jones and McKnight Corp. v. Birdsboro Corp., 320 F.Supp. 35 (N.D.Ill.1970). Allis-Chalmers did honor its express warranty by promptly repairing and re-installing the machine without cost to Cyclops.

 In rejecting the breach of warranty claims, we also reject Plaintiff's claims that the motor delivered was not the one ordered, and the other questions of fact raised by Plaintiff in opposition to the motion for summary judgment. We do not find these questions of fact to be material to the issue of limitation of damages under UCC 2–719, although they might be material to the coverage of warranties, or liability for negligence. Even if breach of a controlling warranty

were established, or negligence or a defect in manufacture were proven, the Defendants are still entitled to their negotiated bargain of allocation of risks between them.

Plaintiff asserts that disputed questions of fact exist which preclude summary judgment because the plaintiff has raised the exceptions of "unconscionability" under par. (3) of UCC 2–719 and of "failure of essential purpose" under par. (2) of UCC 2–719. While the plaintiff argues that these are disputed issues of fact it has produced no evidence in its response to show that a disputed issue exists as to these defenses. As set forth in Fed.R.Civ.P. 56(e):

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a génuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

 While limitation of damages for injuries to the person in the case of consumer goods is prima facie unconscionable, where the loss is commercial it is not. Therefore, it is necessary for the plaintiff to come forth with evidence to show that there is a fact issue as to unconscionability. We recall no evidence in the large body of materials produced to show that there is a disputed fact issue bearing on whether such a limitation of damages is unconscionable except for the claim that this is a determination which should be made by a trier of fact on a full trial of the issue.

 Similarly, as to whether this limitation of damages causes the contract to fail of its essential purpose it appears to the court that no particular evidence has been presented to establish a disputed issue of fact here. The bargain of the parties was that liability of the manufacturer was to be limited to

the correction of the defect, no matter what the cause or the legal basis of liability. The responding party has produced no evidence to show that such a limitation causes the contract to fail of its essential purpose.

In both of these situations we are considering only a limitation that excludes loss of profits during the time that the machine was out of service for repairs. There is no showing of damage to other property, no showing of personal injury, no showing of inequality of bargaining power, no showing of a great disparity between the remedy agreed upon and the nature of the loss, no showing that the time limit on the remedy was grossly inadequate, or that there were any circumstances which caused the limited remedy to fail of its essential purpose.

An appropriate order of Summary Judgment for both defendants and against plaintiff on all claims of consequential damages in the within action will be entered.