890 So.2d 300 (2004)
ALLSTATE FLORIDIAN INSURANCE CO., an Illinois corporation, a/s/o Tom Metzger, Appellant,
v.
RONCO INVENTIONS, LLC, a California corporation; and Popeil Inventions, Inc., a Nevada corporation, Appellees.
No. 2D03-5900.
District Court of Appeal of Florida, Second District.
December 3, 2004.
Mark A. Greenberg of Powers, McNalis & Torres, West Palm Beach, for Appellant.
Jeffrey D. Kottkamp of Henderson, Franklin, Starnes & Holt, Fort Myers, for Appellees.
DAVIS, Judge.
Allstate Floridian Insurance Company ("Allstate") appeals the order entered by the trial court setting aside the final default judgment previously entered against *301 Ronco Inventions, LLC ("Ronco"), and Popeil Inventions, Inc. ("Popeil"). We reverse.
Ronco is a California corporation engaged in manufacturing and selling consumer products throughout the United States. Popeil is a Nevada corporation that is engaged in a similar business. One of the products made and distributed by Ronco and Popeil is the Showtime Rotisserie and BBQ Oven.
The instant action commenced when a consumer, Tom Metzger, purchased a Showtime Rotisserie and BBQ Oven, which he claimed was defective, causing him to suffer a fire loss at his residence. As the insurer of Metzger's residence, Allstate became subrogated to Metzger's rights of recovery against Ronco and Popeil (collectively "Appellees").
Allstate filed its complaint in Lee County on May 7, 2003. Popeil's resident agent was served on May 21, 2003, and Ronco's resident agent was served on June 4, 2003. On June 27, 2003, neither Ronco nor Popeil having filed an answer, Allstate moved for default and mailed copies of the motion to each Appellee's resident agent. On June 30, 2003, the clerk entered a default against each Appellee as to liability. The face of each of the defaults indicates that a copy of the default was mailed to each Appellee's resident agent. On July 30, 2003, Allstate filed affidavits in support of the damages it claimed. Notices of filing these affidavits were served by mail on Appellees' respective resident agents. The trial court entered final default judgment on August 7, 2003, a copy of which was mailed to each of the Appellee's respective resident agents. On September 25, 2003, seven weeks after the August 7, 2003, entry of final default judgment, Ronco and Popeil filed a motion to vacate the final judgment.[1] In their motion, Appellees alleged that they had followed their normal corporate policy of delivering the complaint to their insurance carrier, assuming that the carrier would commence immediate representation of their interests. They further alleged that they had no notice that the insurance company had not assigned an attorney to file a responsive pleading until they received a copy of the final default judgment entered on August 7, 2003. They argued that they had a meritorious defense and that they acted diligently after they learned that the default had been entered.
For a trial court to grant a motion to set aside a default final judgment, the defaulted party must show three things: (1) that the failure to file a responsive pleading was the result of excusable neglect; (2) that it has a meritorious defense; and (3) that it acted with due diligence in seeking relief from the default. Goodwin v. Goodwin, 559 So.2d 109 (Fla. 2d DCA 1990). Here, Allstate conceded that Appellees' answers raised a meritorious defense; however, it argued that Appellees did not demonstrate excusable neglect or show that they acted with due diligence once they learned of the default.
The trial court ruled in favor of Appellees and set aside the default, concluding that their neglect was excusable since they followed their normal policy and depended upon the insurance carrier to defend them. The trial court also concluded that Appellees' *302 act of filing the motion some seven weeks after learning of the entry of final judgment was sufficient to establish that they had acted with due diligence. While we agree with the trial court's conclusion that Appellees demonstrated excusable neglect, we disagree with its finding that they demonstrated due diligence.
For this court to reverse an order granting a motion for relief from a default, the appellant must show a gross abuse of discretion by the trial court. Marshall Davis, Inc. v. Incapco, Inc., 558 So.2d 206 (Fla. 2d DCA 1990). This extremely high standard of review reflects the implementation of the "principle of liberality" in setting aside defaults so that lawsuits may be decided on their merits. Lindell Motors, Inc. v. Morgan, 727 So.2d 1112, 1113 (Fla. 2d DCA 1999) (citing Bland v. Viking Fire Protection, Inc. of the Southeast, 454 So.2d 763 (Fla. 2d DCA 1984)). The troublesome nature of our review here is the admittedly high "gross abuse of discretion" standard. The definition of an abuse of discretion has been provided by the Florida Supreme Court in Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980):
Discretion ... is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
However, we have no definition of what a "gross" abuse of discretion includes or how it differs from an abuse of discretion.[2] We can only assume that it is more egregious than a typical abuse of discretion.
In this case, Appellees successfully established the existence of two of the three factors required to set aside a default final judgment. First, Allstate does not contest the fact that Appellees raised a meritorious defense. Second, Appellees' claims of excusable neglect were sufficient to overcome the gross abuse of discretion standard of review given the fact that they claimed to have followed their normal corporate practice of submitting the complaints to their insurance carrier, which then failed to file timely answers. See Mercury Marine Indus., Inc. v. Dillon, 779 So.2d 356 (Fla. 2d DCA 2000); Kapetanopoulos v. Herbert, 449 So.2d 947 (Fla. 2d DCA 1984). But see Westinghouse Credit Corp. v. Steven Lake Masonry, Inc., 356 So.2d 1329, 1330 (Fla. 4th DCA 1978) ("Negligence by a litigant's representative may be grounds for an independent suit, but it will not support the setting aside of a default judgment save under exceptional circumstance.").
However, the third prong of the test, whether Appellees acted with due diligence, is a more troublesome issue. At the hearing on the motion to set aside the final judgment and default, the trial court found that the motion was filed seven weeks after the entry of the final judgment. Appellees' counsel agreed with that finding. Accordingly, we must determine whether, in light of all the circumstances of this case, the trial court's conclusion that Ronco and Popeil acted with due diligence was a gross abuse of discretion. See Apolaro v. Falcon, 566 So.2d 815 (Fla. 3d DCA 1990). We conclude that it was.
*303 At the hearing on the motion, trial counsel for Ronco and Popeil argued that Techvend, Inc. v. Phoenix Network, Inc., 564 So.2d 1145 (Fla. 3d DCA 1990), supported their claim that they had demonstrated due diligence. However, Appellees completely misconstrued Techvend. Appellees argued that Techvend and Garvin v. South Carolina Insurance Co., 528 So.2d 929 (Fla. 2d DCA 1988), which was cited with approval in Techvend, stood for the proposition that any delay of up to six months was acceptable in the Second District. In reality, Techvend found a three-month delay to be unacceptable. It cited Garvin as support because Garvin had found a six-month delay to be unacceptable, not acceptable, as argued by Appellees. Thus, not only can Techvend not be read to set the upper limit of reasonable delay at six months, it stands for the proposition that a three-month delay is unreasonable and that, pursuant to Fischer v. Barnett Bank, 511 So.2d 1087 (Fla. 3d DCA 1987), even a five-week delay may be considered unreasonable. Therefore, any reliance that the trial court placed on Appellees' interpretation of Techvend as allowing a six-month delay was misplaced.
Moreover, most of the recent cases out of this court that have found the existence of due diligence have involved time periods of but a few days. For example, in Coquina Beach Club Condominium Ass'n v. Wagner, 813 So.2d 1061 (Fla. 2d DCA 2002), a one-week delay from the time the defendant learned of the existence of the default until it filed a motion to set it aside was considered due diligence. In Lindell Motors, 727 So.2d 1112, a three-day delay was determined to be reasonable. Likewise, six days was found to constitute due diligence in Goodwin, 559 So.2d 109. In Marshall Davis, 558 So.2d 206, the accepted delay was fifteen days; in Ponderosa, Inc. v. Stephens, 539 So.2d 1162 (Fla. 2d DCA 1989), a next-day filing was considered reasonable.
In sum, it appears that although this court has found that a fifteen-day delay constitutes due diligence while a six-month delay does not, we have enunciated no "bright line" rule by which to measure the seven weeks that expired in this case. In the absence of such a rule, we must measure this period of time by the standard of reasonableness, which necessarily requires us to consider not only the duration of the delay, but also any other factors that might bear upon the issue of reasonableness.
In examining the reasonableness of a delay in seeking relief from a default and resulting final judgment, Techvend suggested that as a "rule of thumb," we might start with the period in which a defendant must file his answer after initially being served, i.e., twenty days.
While the theoretical underpinning of the due diligence requirement has perhaps not so far been fully explicated, it would appear that the requirement that one move expeditiously to nullify a default is directly related to the reasons for the entry of the default in the first place  to provide for the prompt disposition of legal proceedings. See B.C. Builders Supply Co. v. Maldonado, 405 So.2d 1345, 1348 (Fla. 3d DCA 1981). In essence, one might say, then, that timely action is required to avoid "defaulting" upon the opportunity to set aside a previously entered default. On this basis, the time provided initially to answer the complaint, twenty days, might well serve as a rule of thumb for the period in which a defendant must act to vacate a default after learning of its entry.
Techvend, 564 So.2d at 1146. Although this suggestion has not been accepted by this court as a bright line rule, it does *304 provide a starting point for our analysis. Once the twenty days have passed, as here, other factors must be considered.
We first observe that Appellees were served with numerous documents leading up to the final judgment. Although the affidavit upon which Appellees rely states that Appellees did not learn that their insurance carrier had failed to file responsive pleadings until their representative received a copy of the judgment, the record reveals that Appellees were notified both of the pending suit and of the entry of the default. The complaint and summons were personally served on Ronco's resident agent in California and on Popeil's resident agent in Nevada. Both corporate entities acknowledged that they received the complaints from their agents and forwarded them to their carrier. Further, Ronco and Popeil admit that they received copies of the final judgment that had been mailed to their resident agents. Indeed, they allege that this was their first indication that there was a problem.
The record shows that at least three additional notices were mailed to the resident agents prior to entry of final judgment: (1) copies of the motion for default; (2) copies of the default; and (3) copies of the notice of filing the affidavit in support of final judgment. Significantly, the affidavit filed by Appellees' representative does not state that he did not receive these notices; it states that he was busy with a new project and was not aware that the insurer had not assigned counsel to the case until he received the final judgment. Neither does his affidavit say that he was not given notice of the clerk's default; rather, he claims that he did not recognize that the clerk's default was the result of the carrier's failure to defend against the lawsuit. There is no explanation in the affidavit as to why it is that the complaint and final judgment reached Appellees but these three intervening documents did not.
It must be remembered that Ronco and Popeil are not "mom and pop" operations. They are large corporations that are, due to nationwide television advertising, household names throughout the United States. As such, the corporations are certainly familiar with legal actions. By his own admission, counsel for Ronco advised the trial court that Ronco dealt with "zillions" of these suits.
Moreover, by his own admission in the affidavit, Popeil's representative recognized the implications of the final judgment. The fact that he was too busy with a new project to deal with the legal notices he received prior to final judgment only adds to the unreasonableness of the seven-week delay. Given the above-described "shower" of notices, we conclude that the seven-week delay here was unreasonable. See Otero v. Gov't Employees Ins. Co., 606 So.2d 443 (Fla. 2d DCA 1992).
Based on the facts as demonstrated in this record, we conclude that the trial court grossly abused its discretion in finding that Appellees acted with due diligence. In its order, the trial court referred to the affidavit filed by Appellees' representative and their memorandum of law as the basis for its findings. However, because the affidavit offers no explanation as to why it took seven weeks to seek relief from the default judgment after receiving the judgment, there is no factual support for the trial court's finding. Reaching the legal conclusion that Appellees had shown due diligence when there was no evidence presented upon which to make such a finding is clearly an abuse of discretion. When considered in light of the facts of this case, we consider the ruling to be a gross abuse of discretion requiring reversal.
Reversed and remanded.
*305 CANADY, J., Concurs with opinion.
WALLACE, J., Dissents with opinion.
CANADY, Judge, Concurring with opinion.
I fully concur in the conclusion that the appellees failed to make the required showing of due diligence and that it was a gross abuse of discretion for the trial court to set aside the default final judgment. I write separately for two purposes: (a) to address the dissent's contention that the phone conversation between counsel for the plaintiff and Michael Johnson demonstrates due diligence; and (b) to express the view that the appellees have not demonstrated excusable neglect.
The dissent contends that Cinkat Transportation, Inc. v. Maryland Casualty Co., 596 So.2d 746 (Fla. 3d DCA 1992), Atlantic Asphalt & Equipment Co. v. Mairena, 578 So.2d 292 (Fla. 3d DCA 1991), and Apolaro, 566 So.2d 815, establish the principle that "prompt informal notice to plaintiff's counsel of the defendant's intention to seek relief from the default justifies enlarging the period of time for allowing the defendant to file the motion to set aside the default." The dissent further expresses the view that this principle "is dispositive of this case." The dissent's attempt to apply the holdings in Cinkat Transportation, Atlantic Asphalt, and Apolaro is unwarranted.
An examination of these cases reveals that the determination that the defendant acted with due diligence was based in each case on more than the mere giving of "informal notice" to plaintiff's counsel. In each case, the communication between the defendant's counsel and plaintiff's counsel was accompanied by some circumstance  beyond the mere occurrence of communication by the defendant concerning the default  which provided some explanation for the defendant's delay in moving to set aside the default judgment or the underlying default. In Cinkat Transportation, 596 So.2d at 747, "[t]he delay in filing the motion to vacate was caused by an unfortunate series of miscommunications between [the defendant] and its counsel." In Atlantic Asphalt, 578 So.2d at 293, the defendant's attorney "testified that based upon [his] conversation [with the plaintiff's attorney] he believed that he had been given an extension to file the motion to vacate." In Apolaro, 566 So.2d at 817, "there was at best a misunderstanding" arising from the telephone conversation between counsel for the defendant and counsel for the plaintiff "which delayed the actual filing of the motion which plaintiffs knew would be forthcoming."
In the instant case, the record contains no evidence of a belief that an extension had been granted or of any misunderstanding or any miscommunications. At most, the conversation with plaintiff's counsel involved an acknowledgment that defaults are liberally set aside. The conversation itself did nothing to initiate action on behalf of the appellees to deal with the defense of the litigation against them. And there is nothing in the facts concerning the conversation that provides any justification or explanation for the appellees' continuing failure to respond to that litigation.
The dissent acknowledges that the motion to vacate the default judgment "offered no explanation for the delay" in the filing of that motion. The dissent speculates, however, that "[t]here may have been a good reason for a delay in filing the motion." (Emphasis added.) Such speculation is wholly insufficient to support the conclusion that the appellees exercised due diligence. The appellees had the burden of demonstrating that they acted with due diligence in filing the motion to vacate the default judgment. They presented nothing *306 to the trial court that provided any explanation for the extended delay in moving to vacate the judgment.
In evaluating the due diligence issue, in addition to considering the seven-week delay after entry of the default final judgment, it is also appropriate to consider the delay from the time the appellees were first put on notice that the suit was in fact not being defended. From the time of the service of the plaintiff's motion for default on June 27, 2003, the appellees were put on notice that something was seriously amiss in the defense of the suit against them. Despite this notice, the appellees did nothing to respond to the litigation until September 25, 2003. This nearly three-month delay is totally unexplained. And it is wholly inconsistent with the conclusion that the appellees acted with due diligence. Since the appellees failed to present any basis to support the conclusion that they acted with due diligence, it was a gross abuse of discretion to grant their motion. See Paleias v. Wang, 632 So.2d 1132, 1134 (Fla. 4th DCA 1994) ("[I]t cannot be said that the defendant acted with due diligence in moving to set aside the default where 100 days had elapsed after receipt of the unilateral pretrial stipulation indicating a default had been entered, with no reason offered for the delay.").
In connection with the due diligence issue, I disagree with the dissent's criticism of the reference to a twenty-day period  equivalent to the period allowed for the service of an answer to a complaint  as "a starting point" for analyzing whether due diligence was exercised. The import of that reference is that (a) the filing of a motion to vacate within twenty days of entry of a default judgment will ordinarily indicate due diligence in seeking to set aside the judgment, and (b) when a motion to vacate is not filed within the twenty-day period further inquiry must be made to determine whether there was a justifiable reason for the delay beyond the twenty-day period. Consideration of the twenty-day benchmark is not "an inappropriate substitute for the reasoned consideration of the facts in individual cases." On the contrary, it is merely a factor that can be utilized in carrying out the reasoned consideration of all the relevant circumstances of an individual case.
Finally, I conclude that the appellees not only failed to demonstrate that they acted with due diligence but also failed to establish excusable neglect. The appellees' inaction after receipt of notice that the suit against them was not being defended shows not only a lack of due diligence but also a lack of excusable neglect. In the circumstances presented here, the appellees' reliance on their insurer to defend the lawsuit was inadequate to show the requisite excusable neglect. Reasonable reliance on an insurer to handle the defense of a suit will be sufficient to establish excusable neglect. But a defendant cannot reasonably continue to rely on the insurer in the face of notice that the insurer is not providing the defense. After the appellees were given notice of the plaintiff's motion for default on June 27, 2003, their further reliance on the provision of a defense by the insurer was unreasonable. What may have begun as reasonable neglect was transformed into inexcusable neglect. See Paleias, 632 So.2d at 1134 (holding that "defendant ... failed to demonstrate excusable neglect" where "[t]here was no showing that defendant's reliance on her insurer was justified, especially in view of the continuing notice she received, through subsequent pleadings sent directly to her, prior to the trial on damages and entry of a default judgment").
WALLACE, Judge, Dissenting.
The record establishes that shortly after the default, Allstate's counsel received informal *307 notice of the failure of Appellees' insurance carrier to defend the action and of Appellees' intention to seek appropriate relief in the trial court. Because this fact supports the trial court's finding that Appellees acted with due diligence in moving for relief from the default and the default judgment, I respectfully dissent.
Of the three requirements which must be met in order to set aside a default, two are clearly established. Allstate concedes that Appellees' proposed answer and affirmative defenses constituted meritorious defenses for the purposes of Florida Rule of Civil Procedure 1.540(b)(1). Although Allstate argues that Appellees failed to prove excusable neglect, Judge Davis, writing for the court, properly concludes that evidence of Appellees' reliance on their insurance carrier to defend the action supports the trial court's finding that Appellees demonstrated excusable neglect. See Edwards v. City of Fort Walton Beach, 271 So.2d 136 (Fla.1972); Finkel Outdoor Prods., Inc. v. Lasky, 529 So.2d 317 (Fla. 2d DCA 1988); Shaker Lakes Apts. Co. v. Dolinger, 714 So.2d 1040 (Fla. 1st DCA 1998); Venero v. Balbuena, 652 So.2d 1271 (Fla. 3d DCA 1995). Thus the critical leg of the legal tripod in this case is the due diligence requirement.
In Techvend, Inc. v. Phoenix Network, Inc., 564 So.2d 1145 (Fla. 3d DCA 1990), the Third District proposed twenty days "as a rule of thumb for the period in which a defendant must act to vacate a default after learning of its entry." Id. at 1146. I do not agree that the twenty-day rule of thumb should be "a starting point for [the] analysis" of the due diligence issue, as stated in the opinion of the court. The only "bright line" established for moving to set aside a default is the one-year limitation of Florida Rule of Civil Procedure 1.540(b). As Judge Cope pointed out in his specially concurring opinion in Techvend,"[t]he question of what constitutes due diligence in moving to vacate the default must ... be determined on the facts of each case." 564 So.2d at 1146. In another case involving a defendant's misplaced reliance on an insurance carrier to defend an action, the Supreme Court of Florida declared: "Obviously the facts of each case are of singular importance in determining whether or not relief under [rule] 1.540(b) should be granted." Edwards v. City of Fort Walton Beach, 271 So.2d 136, 137 (Fla.1972). A "rule of thumb" is a "useful principle having wide application but not intended to be strictly accurate or reliable in every situation." The American Heritage Dictionary of the English Language 1522 (4th ed.2000). The adoption of a rule of thumb for deciding motions to vacate defaults is inconsistent with the supreme court's injunction to the lower courts to consider the facts of each case in determining whether a default should be set aside. For this reason, the application of a rule of thumb is an inappropriate substitute for the reasoned consideration of the facts in individual cases.
The majority in Techvend stated that its twenty-day rule of thumb for determining due diligence in moving to set aside a default was only "tentatively advanced." 564 So.2d at 1146. Indeed, the Third District quickly departed from the twenty-day rule of thumb in a series of four cases in which the due diligence requirement in moving to set aside a default was at issue. The first of these cases, Apolaro v. Falcon, 566 So.2d 815 (Fla. 3d DCA 1990), was decided only two months after Techvend. In Apolaro, the court reversed the trial court's denial of a motion to set aside a default where the defendants waited between thirty to forty days after learning of the entry of the default to file their motion. Judge Cope, who had written a special concurrence objecting to the twenty-day rule of thumb announced in Techvend, *308 wrote the opinion for the court in Apolaro. The Apolaro opinion analyzed the facts of the case without reference to the twenty-day rule of thumb. In a footnote, Judge Cope noted that the "analysis would remain true even if a different guidepost were used to measure presumptive promptness in moving to set aside a default" and cited to Techvend. Apolaro, 566 So.2d at 817 n. 1.
The second case in the series, Franklin v. Franklin, 573 So.2d 401 (Fla. 3d DCA 1991), is the most striking departure from the twenty-day rule of thumb. In Franklin, the court reversed a trial court order denying a motion to vacate a default filed by a husband who had waited nine months after the entry of a final judgment of dissolution of marriage to seek relief. Writing for the court, Chief Judge Schwartz, who had written the majority opinion in Techvend, analyzed the facts of the case without reference to the twenty-day rule of thumb. A footnote in the Franklin opinion highlighted the Third District's apparent ambivalence about the twenty-day rule of thumb "tentatively advanced" in Techvend:
Our holding that, under these circumstances, the mere passage of nine months is not alone sufficient to demonstrate a lack of "due diligence" or that the period is unreasonable does not require that we either accept or reject the "twenty day rule of thumb" tentatively proposed by the majority in Techvend and resisted by the special concurrence. This is so because even if the "rule of thumb" applies, it is no more than that and is overcome here by the explanation for the delay and the fact that no prejudice is asserted. (In this respect, the issue may be analogized to the "rule of thumb" that the statute of limitations guides the determination of whether there has been an unreasonable delay in applying the defense of laches in equity. Briggs v. Estate of Geelhoed, 543 So.2d 332, 333 (Fla. 4th DCA 1989). There too, the mere fact that the limitations period is exceeded does not eliminate a holding that under the facts of the particular case, the delay was not unreasonable. E.g., Tutwiler Cadillac, Inc. v. Brockett, 551 So.2d 1270, 1272 (Fla. 1st DCA 1989).)
573 So.2d at 403 n. 4. Ultimately, the court distinguished Techvend and other cases that found that even shorter delays were excessive "on the obvious ground that no equitable reasons to justify the delay appear in those decisions." Id. at 404 n. 5.
In the next two cases, the Third District reversed trial court decisions denying motions to vacate defaults where the periods of delay substantially exceeded twenty days. Atl. Asphalt & Equip. Co. v. Mairena, 578 So.2d 292 (Fla. 3d DCA 1991) (approximately fifty-five days); Roberts v. Safeway Ins. Co., 610 So.2d 700 (Fla. 3d DCA 1992) (sixty-six days or longer). In both of these cases, the court did not mention the twenty-day rule of thumb or cite to its recent opinion in Techvend. In the twelve years since these two cases were decided, the Third District has occasionally cited to Techvend with approval, but it has never again mentioned the twenty-day rule of thumb.[3]
As the foregoing analysis demonstrates, the Third District departed from the twenty-day rule of thumb proposed in Techvend almost as soon as that case was decided. It seems fair to conclude that the Third District found the adoption of the twenty-day rule of thumb to be ill advised and has receded sub silentio from Techvend, at *309 least to the extent that the opinion suggests twenty days as a flexible standard for deciding the issue of due diligence in cases involving motions for relief from defaults and default judgments. None of the other district courts of appeal have adopted the twenty-day rule of thumb. Since the Third District has already abandoned the twenty-day rule of thumb as a tool for deciding cases and none of the other district courts of appeal has seen fit to adopt it, I am unable to discern a persuasive reason for this court to embrace it now.
Having noted my reservations about the twenty-day rule of thumb as a tool for deciding the issue of due diligence in cases involving motions for relief from defaults, I turn now to a consideration of the facts in this case. At the hearing on the motion to vacate the default and the default judgment, the trial court had before it the affidavit of Michael Johnson, a representative of Appellees.[2] In his affidavit, Mr. Johnson recited the facts concerning Appellees' reliance on their insurance carrier and the carrier's unexplained failure to assign counsel to defend Allstate's action. Mr. Johnson claimed that he did not become aware of a problem with responding to the complaint until he received a copy of the default judgment. When Mr. Johnson received a copy of the default judgment, he made a telephone call to Mark Greenberg, counsel for Allstate. Mr. Johnson's affidavit describes what happened next:
Upon receipt of the notice of default judgment, I contacted Mark Greenberg *310 with the mistaken belief that he was the counsel assigned to defend Popeil Inventions, Inc., by the insurance company. I explained what happened and he asked if I had counsel. At that point, I stated that he was my counsel and he corrected me as to his role. I then asked how I should proceed and Mr. Greenberg stated "As your lawyer will advise, it is very simple to have a default judgment set aside in Florida." "Don't worry." "The process is basically automatic." I told him that we would file an answer once I retained counsel and he stated that there would be procedural changes due to the default judgment being entered.
In a verified response to Appellees' motion to vacate, Mr. Greenberg conceded that Mr. Johnson did call him and that Mr. Johnson was laboring under the mistaken impression that Mr. Greenberg, Allstate's counsel, was representing Appellees. However, Mr. Greenberg asserted that the telephone conversation occurred after the entry of the clerk's default but before entry of the default judgment. Mr. Greenberg also conceded that he had advised Mr. Johnson that "[d]efaults were often set aside." Nevertheless, Mr. Greenberg stated that he had not given Appellees an extension of time to respond to the lawsuit or agreed to set aside the default.
Taking both Mr. Johnson's affidavit and Allstate's verified response into account, there was competent, substantial evidence before the trial court to support the following findings of fact: (1) Appellees relied upon their insurance carrier to defend Allstate's complaint; (2) for reasons unexplained in the record, the carrier failed to assign counsel to defend the action; (3) Mr. Johnson was operating under the erroneous belief that counsel had been assigned; (4) upon receipt of either the notice of default or the default judgment, Mr. Johnson contacted Mr. Greenberg, Allstate's counsel, by telephone; (5) as a result of Mr. Johnson's telephone call to Mr. Greenberg, both parties became aware of the foul-up which had occurred; (6) during the telephone conversation between Mr. Johnson and Mr. Greenberg, the parties had a general discussion about the possibility of and the procedure for setting aside the default that had been entered  although Mr. Greenberg did not agree on behalf of Allstate to the entry of an order for such relief; and (7) as a result of the telephone call from Mr. Johnson, Allstate should reasonably have anticipated that Appellees would be filing a motion to set aside the default and the default judgment.
In cases such as this one where shortly after the entry of a default the plaintiff's counsel receives informal notice that the defendant will be filing a motion to set aside the default, the due diligence requirement may be deemed satisfied even though the period of delay involved in filing the motion to vacate the default might under other circumstances be held to be too long. See Cinkat Transp., Inc. v. Md. Cas. Co., 596 So.2d 746 (Fla. 3d DCA 1992) (finding due diligence when the defendant "promptly" contacted plaintiff's counsel upon learning of the entry of default, even though the motion to vacate was not filed until over two months thereafter); Atl. Asphalt, 578 So.2d at 293 (finding due diligence when plaintiff's counsel was contacted within four days of the entry of default, even though the motion was not filed until approximately fifty-five days thereafter); Apolaro, 566 So.2d at 817 (finding due diligence when plaintiff's counsel was contacted "very promptly" after entry of default, even though the motion to vacate was not filed until thirty to forty days thereafter). In each of these cases, the trial court grossly abused its discretion by refusing to grant the motion to vacate. Pursuant to these cases, prompt informal notice to plaintiff's counsel *311 of the defendant's intention to seek relief from the default justifies enlarging the period of time for allowing the defendant to file the motion to set aside the default for two reasons. First, because it is appropriate for defense counsel to contact plaintiff's counsel before filing the motion in order to ascertain whether plaintiff's counsel will agree to the entry of an order vacating the default, such conduct should be encouraged instead of penalized by decreasing the time remaining within which to file the motion in order to establish due diligence in the event no agreement is possible. Id. Second, actual notice of the defendant's intention to move to set aside the default minimizes any prejudice to the plaintiff that might otherwise result from additional delay in filing the motion to set aside the default. Atl. Asphalt, 578 So.2d at 293; Apolaro, 566 So.2d at 817.
In my view, the principle recognized in Cinkat Transportation, Atlantic Asphalt, and Apolaro is dispositive of this case. I agree with the opinion of the court and the concurrence that the delay of seven weeks in the filing of Appellees' motion to vacate was longer than what one might ordinarily expect, but it was not egregiously so. There may have been a good reason for the delay in filing the motion. Unfortunately, the affidavit filed in support of Appellees' motion was poorly drafted and offered no explanation for the delay. [3] Nevertheless, Mr. Johnson's prompt telephone call to Allstate's counsel upon learning of the entry of the default put Allstate on notice that there was a problem and that a motion to vacate the default and the default judgment would be filed. Indeed, Allstate's counsel gave Mr. Johnson at least some information concerning the procedure that had to be followed to set aside the default.[4] Allstate does not point to any prejudice it will sustain as a result of the trial court's order vacating the default and the default judgment. Under these circumstances, there are ample facts in the record to support the trial court's finding that Appellees satisfied the due diligence requirement.
Another factor that weighs in favor of the trial court's decision to vacate the default and the default judgment is related to the presence of a third defendant in the court below. Allstate sued Ronco and Popeil as designers, manufacturers, and distributors of the allegedly defective rotisserie oven. However, Allstate also sued Dillards, Inc., (Dillards) as the product retailer.[5] Unlike Ronco and Popeil, Dillards did not default and responded to the lawsuit. "The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or procrastinating defendant from impeding the plaintiff in the establishment of his claim." Coggin v. Barfield, 150 Fla. 551, 8 So.2d 9, 11 (Fla.1942). In this case, the trial court may have considered that denying Appellees' motion to vacate the default and the default judgment would do nothing to speed the progress of the lawsuit because Allstate had to litigate its claim against Dillards in any event. [6] Thus to deny Ronco *312 and Popeil the opportunity to defend Allstate's claims on the merits would serve no legitimate purpose. The entry of a default is not a "procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant." Id.
Florida adheres to a liberal policy with regard to vacating defaults. N. Shore Hosp., Inc. v. Barber, 143 So.2d 849, 852-53 (Fla.1962); Lindell Motors, Inc. v. Morgan, 727 So.2d 1112, 1113 (Fla. 2d DCA 1999). "[I]f there be any reasonable doubt in the matter [of vacating a default], it should be resolved in favor of granting the application and allowing a trial upon the merits of the case." State Bank of Eau Gallie v. Raymond, 103 Fla. 649, 138 So. 40, 43 (1931). Moreover, "a showing of gross abuse of a trial court's discretion is necessary on appeal to justify reversal of the lower court's ruling on a motion to vacate." N. Shore Hosp., Inc., 143 So.2d at 852. In a case such as this where the trial court exercised its discretion in favor of granting relief, "a higher standard is applied to overturn the decision than if the trial court had denied the motion[ ]." Geer v. Jacobsen, 880 So.2d 717, 720 (Fla. 2d DCA 2004).
In this case, as the opinion of the court notes, Ronco and Popeil are not "mom and pop" operations. On the contrary, they are both large corporations whose names are familiar to television viewers throughout the United States. However, no one would mistake this case for a tale of David and Goliath. Allstate, the plaintiff in the trial court, is a major national insurance company and is no stranger to litigation. Like Ronco and Popeil, it deals with "zillions" of lawsuits. Mr. Johnson's telephone call gave Allstate's counsel timely notice of the failure of Appellees' insurance carrier to arrange for a defense of the action. Once he had spoken with Mr. Johnson, Allstate's counsel knew that a motion to set aside the default and the default judgment would be forthcoming. That the period of time it took to file the motion was longer than what may have been necessary under the circumstances was of no consequence and caused no identifiable prejudice to Allstate. On these facts, the experienced trial judge in the court below concluded that it was appropriate for these corporate titans to litigate Allstate's claims on the merits. I am unable to say that the trial court committed a gross abuse of its considerable discretion in reaching this conclusion. Therefore, I would affirm the trial court's order.
NOTES
[1] Ronco and Popeil are separate corporate entities that were sued independently in this lawsuit. However, they filed the motion to vacate the final judgment jointly. The lawyer who appeared at the hearing on that motion orally represented to the trial court that he represented only Ronco. The affidavit upon which both Ronco and Popeil rely was executed by Michael Johnson, who averred in that affidavit that he represented Popeil. Given our disposition of this case, we need not address the issues posed by these facts.
[2] In a footnote in Emmer v. Brucato, 813 So.2d 264, 265 n. 1 (Fla. 5th DCA 2002), the Fifth District suggests that there is but one standard and that the word "gross" was merely surplusage used by the Florida Supreme Court in North Shore Hospital, Inc. v. Barber, 143 So.2d 849 (Fla.1962), where the standard was adopted.
[3] I have not attempted to make an exhaustive survey of the Third District cases after Techvend involving appeals from orders granting or denying motions for relief from defaults.
[2] In the first footnote to the opinion of the court, Judge Davis raises questions concerning the representation of Appellees' trial counsel and whether Mr. Johnson's affidavit applied to both Ronco and Popeil, or only to Popeil. I think a fair reading of the record as a whole disposes of both of these apparent difficulties.

First, Appellees' trial counsel filed the motion to vacate the default and the default judgment on behalf of both Ronco and Popeil. He also filed a memorandum of law in support of the motion on behalf of Ronco and Popeil. Appellees' trial counsel clearly misspoke at the beginning of the hearing on the motion to vacate when he announced that he was representing Ronco and omitted to mention that he was also representing Popeil. A review of the entire transcript of the hearing demonstrates that Appellees' trial counsel presented the motion on behalf of both of his clients.
Second, Mr. Johnson intended his affidavit to refer to both Ronco and Popeil, and Allstate interpreted it as such. I concede that Mr. Johnson's affidavit refers specifically to Popeil Inventions, Inc., but fails to mention Ronco Inventions, Inc., by name. The affidavit is not in the format for affidavits generally employed by attorneys practicing in Florida. It appears to have been prepared by a layman, possibly by Mr. Johnson, the affiant. Two references in the affidavit to "our insurance company" (emphasis added) suggest that Mr. Johnson intended to refer to both Ronco and Popeil. So does Mr. Johnson's assertion that "I told him [Allstate's counsel] that we would file an answer once I retained counsel." (Emphasis added.) Indeed, Allstate interpreted the affidavit as referring to both Ronco and Popeil. In a verified response to the motion to vacate filed in the trial court prior to the hearing, Allstate's counsel said: "[T]he affidavit still demonstrates that RONCO and POPEIL were not paying attention to this lawsuit." This statement appears in the memorandum as part of the argument on the issue of excusable neglect and is repeated verbatim in the corresponding section of Allstate's initial brief filed in this court.
Allstate cannot have it both ways. If, as Allstate argued in the trial court and continues to argue here, the affidavit tends to disprove both Appellees' claims of excusable neglect, then Allstate cannot also argue that it was filed with reference to Popeil only. When Allstate's counsel objected at the hearing in the trial court that the affidavit was filed with reference to Popeil only, Appellees' trial counsel called this inconsistency in Allstate's position to the attention of the trial court. Taking all of the circumstances into account, the trial court could reasonably conclude that Mr. Johnson's affidavit referred to both Ronco and Popeil.
[3] Appellees' counsel on this appeal did not represent them in the trial court.
[4] Mr. Mark Greenberg, Allstate's counsel, should be commended for his fairness in dealing with Mr. Johnson, who was not represented by counsel at that point.
[5] The extent of the involvement, if any, of Ronco, Popeil, and Dillards with the rotisserie oven and their respective roles is unknown to us. Our record in this case is limited. Of course, there had been no proceedings on the merits in the trial court at the time of the entry of the order on appeal.
[6] It also seems likely that Dillards would file a cross-claim against Ronco and Popeil for indemnity. E.g., Council Bros., Inc. v. Ray Burner Co., 473 F.2d 400 (5th Cir.1973); see Fla. R. Civ. P. 1.170(g).